Kenneth E. Lyon, III
Nevada Bar Number 7071
Law Offices of Kenneth E. Lyon, III
10389 Double R Blvd.
Reno, Nevada 89521
Telephone: (775) 398-5800
Facsimile: (775) 398-5801

Attorney for
GGW GLOBAL BRANDS, INC.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re:<br><br>GGW BRANDS, LLC, *et al*<br><span style="padding-left:5em">Debtor</span><br>_____<br><br>GGW GLOBAL BRANDS, INC. as successor in interest to PEPE BUS, LLC,<br><br><span style="padding-left:5em">Appellant</span><br><br>v.<br><br>WYNN LAS VEGAS LLC d/b/a WYNN LAS VEGAS; GGW DIRECT, LLC; GGW BRANDS, LLC; GGW EVENTS, LLC,<br><br><span style="padding-left:5em">Appellees</span><br>_____ | Case No.: 2:13-cv-01586-APG-NJK<br><br>Assigned for All Purposes to Hon. Andrew P. Gordon<br><br>Bankruptcy Adv. Case No: 13-01050-MKN<br><br>**APPELLANT GGW GLOBAL BRANDS. INC. OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing:<br>Date:    TBD<br>Time:    TBD<br>Place:    TBD |

GGW GLOBAL BRANDS, INC., as successor in interest of certain assets of PEPE BUS, LLC ("Appellant"), by and through its counsel, files its Opposition to the Motion to Dismiss Appeal as follows:

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF THE CASE/PROCEDURAL HISTORY ............................................. 1

III.  ARGUMENT .......................................................................................................... 4

    A.  The Nevada Bankruptcy Court's Order is an Appealable Order ............................ 4

    B.  Appellant is Entitled to a Trial on the Merits of Its Claims Raised in the Nevada Adversary Proceeding  and the California Approval Proceeding Does Not Collaterally Estop Appellant from Being Able to Pursue Such Claims.......................................................................................................... 5

    C.  The Appeal is Not Moot.................................................................................. 10

    D.  GGW Brands, Inc. is a Proper Party to the Litigation ......................................... 11

IV.  CONCLUSION .................................................................................................... 13

## TABLE OF AUTHORITIES

### Cases

Harmston v. City and County of San Francisco, 627 F.3d 1273, 1278 (9th Cir. 2010)...............................................................................................................................5

In re Blixseth, 2012 WL 3234205 (9th Cir. BAP  2012) ..........................................8. 9

In re White, 727 F.2d 884, 885 (9th Cir. 1984)........................................................4

Kremer v. Chemical Const. Corp., 456 U.S. 461, 480-481 (1982)...............................10

McCarthy Western Constructors, Inc. v. Phoenix Resort Corp., 951 F.2d 1137, 1141-1142 (9th Cir. 1991).........................................................................................12

Preblich v. Battley, 181 F.3d 1048, 1055 (9th Cir. 1999); In re Mason, 709 F.2d 1313, 1318 (9th Cir. 1983)..........................................................................................4

Weil et al v. US Bank et al, 2000 WL 33712215 (Bankr Idaho  2000).........................12

### Statutes

28 U.S.C. §158(a)(1) ...........................................................................................4, 5

Montana Code Annotated §35-8-909 .........................................................................12

### Rules

BAP Rule 8013-1 ....................................................................................................8

F.R.A.P. §32.1 ........................................................................................................8

F.R.B.P. 7024 ..........................................................................................................12

F.R.C.P. 24(a)(2) ....................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Counsel for Appellee Wynn Las Vegas LLC seeks to have dismissed the appeal by Appellant GGW Brands, Inc. of the Nevada Bankruptcy Court's Order Approving Stipulation Regarding Resolution of Removed Action because supposedly: (1) the Nevada Bankruptcy Court's order that is being appealed is not a final judgment, order or decree: (2) the appeal is precluded by the doctrine of collateral estoppel; (3) the appeal has become moot; and (4) Appellant is not a proper party to the litigation.

Each of these grounds offered for dismissal fails for the reasons set forth in the arguments below.

### II.   STATEMENT OF THE CASE/PROCEDURAL HISTORY

The underlying Adversary Case was initially a Nevada state court proceeding. The state court case was Case No. A-12-660288-B. For a copy of the Complaint, see Appellant's Appendix filed with Appellant's earlier emergency motion for a stay pending appeal (Doc No. 12-17) ("Appellant's App.), Vol. I, Tab C, pgs 29 - 34.

The Complaint filed by WYNN LAS VEGAS, LLC named GGW DIRECT, LLC, GGW BRANDS, LLC, GGW EVENTS, LLC, DAVID HOUSTON, SANDS MEDIA, LLC, BLUE HORSE TRADING, LLC, JOSEPH FRANCIS, and PEPE BUS, LLC (to which Appellant is successor in interest), as Defendants. The Complaint sought a declaratory judgment that WYNN LAS VEGAS, LLC had sole right to approximately $1.9 million of funds on deposit in a client trust account maintained by Attorney David Houston.  See First Cause of Action of Complaint, Appellant's App. Vol. I, Tab C, Pgs 32-33.

PEPE BUS, LLC, the entity to which Appellant is successor in interest, although named as a Defendant in the state court litigation, was never served with a Summons or Complaint. See the Register of Actions for the State court proceeding, Appellant's App., Vol. I, Tab B, Pgs 19- 27.

Shortly after Defendants GGW DIRECT, LLC, GGW BRANDS, LLC and GGW EVENTS, LLC (collectively, "Debtors") filed for Chapter 11 bankruptcy in the Central District of California Bankruptcy Court, the Debtors removed the Nevada state court proceeding to the

1

1   United States Bankruptcy Court for the District of Nevada. The Proof of Service attached to the

2   Notice of Removal does not reflect service of the Notice of Removal upon any of the Defendants

3   to the Nevada state court proceedings. For a copy of the Notice of Removal of the Nevada state

4   court case to the United States Bankruptcy Court for the District of Nevada, see Appellant's App.,

5   Vol I, Tab B, pgs. 15-28.

6        After removal of the case to the United States Bankruptcy Court for the District of

7   Nevada, the Debtors and WYNN LAS VEGAS, LLC came to an agreement to divide the trust

8   fund monies up amongst themselves, and WYNN LAS VEGAS, LLC filed a motion with the

9   United States Bankruptcy Court for the District of Nevada for approval of the settlement

10  agreement's proposed resolution of the Nevada case and the division of the attorney trust funds.

11  The Defendants in the adversary proceeding other than Debtors and WYNN LAS VEGAS, LLC

12  were not parties to the settlement agreement and the settlement agreement called for the division

13  of the trust funds solely between Debtors and WYNN LAS VEGAS, LLC, and did not include any

14  other Defendants. For a copy of the Notice of Motion and Motion for Order Approving

15  Stipulation Regarding Resolution of Removed Action, see Appellant's App., Vol I, Tab E, pg. 42

16  through Appellant's App., Vol. IV, Pg 684.

17       Prior to the deadline for filing Oppositions to the Nevada Motion, Appellant, as successor

18  in interest to Defendant PEPE BUS, LLC (which was never served with a Summons or Complaint

19  in connection with the removed adversary proceeding and never served with a copy of the Nevada

20  Motion), filed an Answer, Counter-claim and Cross-Claim in the Nevada Bankruptcy Court

21  adversary proceeding seeking a Declaratory Judgment that the disputed trust funds belonged to it

22  and not WYNN LAS VEGAS, LLC or the Debtors. For a copy of the Answer, Counter-Claim and

23  Cross-Claim, see Appellant's App. Vol. IV, Tab F, pgs. 685-688.  Business records of PEPE

24  BUS, LLC show that funds deposited into the attorney trust account at issue came from PEPE

25  BUS, LLC, and Defendant PEPE BUS, LLC assigned all of its rights to such monies to Appellant.

26  See, Declaration of Joseph Francis, Appellant's App. Vol VI, Tab H , pgs. 1059-1067.

27       Simultaneously with the filing of the Answer, Counter-Claim and Cross-Claim, Appellant

28  filed an Opposition to WYNN LAS VEGAS, LLC's Motion for Order Approving Stipulation

1   Regarding Resolution of Removed Action pending before the Nevada Bankruptcy Court. The

2   Opposition was based on the fact that Appellant, as successor in interest to PEPE BUS, LLC, was

3   a party to the litigation, had pending counterclaims and cross-claims in the adversary proceeding

4   with respect to the trust fund monies, and thus a resolution of claims to the trust fund monies

5   could not occur pursuant to a settlement agreement to which it was not a party until its claims

6   were resolved in the adversary proceeding. For a copy of the Opposition, see Appellant's App.,

7   Vol. IV, Tab F, Pgs 685-688.

8       WYNN LAS VEGAS, LLC then filed a Reply in which it argued, for the first time, that

9   Appellant was supposedly precluded by collateral estoppel from pursuing its claims in the Nevada

10  adversary proceeding because the California Bankruptcy Court, in connection with its

11  consideration of the Chapter 11 Trustee's Motion for Settlement Approval pursuant to F.R.B.P.

12  §9019 with respect to the Stipulation, had ruled that Appellant had failed to present to the

13  California Bankruptcy Court in connection with the Chapter 11 Trustee's 9019 Motion for

14  Approval of the Stipulation any evidence supporting Appellant's claims to the trust funds. For a

15  copy of the Reply and supporting documentation, see Appellant's App., Vol IV, Tab G, Pg. 689

16  through Vol. VI, Pg. 1040.

17      Because WYNN LAS VEGAS, LLC was raising these arguments for the first time in its

18  Reply, Appellant filed a Supplemental Opposition highlighting for the Nevada Bankruptcy Court

19  that collateral estoppel did not apply because Appellant had never litigated its claims in front of

20  the California Bankruptcy Court or presented its evidence to the California Bankruptcy Court.

21  Appellant had merely, as part of its Opposition to the 9019 Motion, informed the California

22  Bankruptcy Court of its intent to litigate its claims as part of the Nevada adversary proceeding.

23  For a copy of the Supplemental Opposition, see Appellant's App. Vol. VI, Tab H, Pg 1041-1068.

24      At a hearing held on August 29, 2013, the United States Bankruptcy Court for the District

25  of Nevada struck Appellant's Supplemental Opposition, granted WYNN LAS VEGAS, LLC's

26  motion for approval of the settlement, and ordered that the trust funds be immediately divided up

27  between the Debtors and Wynn Las Vegas. The Nevada Bankruptcy Court then, as part of the

28  order, dismissed the Debtors, without prejudice, and remanded the case back to the state court For

a copy of the Nevada Bankruptcy Court's final order/judgment issued on August 30, 2013, see Appellant's App. Vol VI, Tab J, Pgs. 1159-1166.

On September 3, 2013, Appellant filed a Notice of Appeal with the United States Bankruptcy Court for the District of Nevada and also on that date filed a Notice of Election to Have Appeal Heard by the District Court. A copy of the filed Notice of Appeal and Notice of Election to Have Appeal heard by District Court is attached to Appellant's App., Vol. VI, Tab K.

### III. ARGUMENT

### A.    The Nevada Bankruptcy Court's Order is an Appealable Order

28 U.S.C. §158(a)(1) grants jurisdiction to district courts to hear appeals from "all final judgments, orders, and decrees" of bankruptcy judges.

The Ninth Circuit has taken a "pragmatic" approach in determining whether a judgment, order or decree is "final" in the context of bankruptcy cases. Preblich v. Battley, 181 F.3d 1048, 1055 (9th Cir. 1999); In re Mason, 709 F.2d 1313, 1318 (9th Cir. 1983).

This approach "emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings." In re White, 727 F.2d 884, 885 (9th Cir. 1984).

In the present case, as earlier described, the Nevada Bankruptcy Court's Order conclusively determined the rights of the adversary proceeding parties to the attorney trust funds at issue, ordered a distribution of the trust funds to certain of the parties, dismissed the Debtors from the litigation, and remanded the case back to the state court.

Therefore, from the standpoint of the Nevada Bankruptcy Court, and the federal judiciary, the appealed Order disposed of the case in its entirety, because following the Order (if the Order is not reversed on appeal), the case will no longer be pending in federal court. As indicated by the Ninth Circuit, a final judgment adjudicates the issues on the merits and evidences the judge's intent that it be the court's final act in the matter. *National Distribution Agency v. Nationwide Mut. Ins. Co.,* 117 F.3d 432, 433 (9 [th] Cir.1997). In the present case, the Order being appealed was clearly the Bankruptcy Court's final act in the matter since the Bankruptcy Court then ordered the case remanded to the state court.

4

The Ninth Circuit has clearly indicated that remand orders to state court are final appealable orders and sweep in all prior non-final orders by the court. *Harmston v. City and County of San Francisco,* 627 F.3d 1273, 1278 (9th Cir. 2010).["These cases establish that remand orders are 'final' for purposes of sweeping in prior non-final orders. To the extent our decision in *Powerex* left open the question whether remand orders to state court are final or collateral orders, we now hold that such remands are final for purposes of § 1291."]

Therefore, the Order being appealed is a final order and appealable as of right under 28 U.S.C. §158(a)(1).

**B.** **Appellant is Entitled to a Trial on the Merits of Its Claims Raised in the Nevada Adversary Proceeding and the California Approval Proceeding Does Not Collaterally Estop Appellant from Being Able to Pursue Such Claims**

Wynn Las Vegas argues that Appellant is supposedly collaterally estopped from appealing the Nevada Bankruptcy Court's Order because of Appellant's limited participation in the earlier California approval proceedings. That is simply not the case.

First, it is important to understand the breadth of matters covered by the Settlement Agreement which the Chapter 11 Trustee sought to be approved by the California bankruptcy court and which Wynn Las Vegas later sought to be approved by the Nevada bankruptcy court. In its Motion for Dismissal of Appeal, in an attempt to mischaracterize the nature and extent of Appellant's participation in the California approval proceedings, Wynn Law Vegas discusses only those portions of the Settlement Agreement involving the trust funds and the adversary proceeding. However, the Settlement Agreement also contained provisions totally unrelated to the adversary proceeding and which directly impacted the Debtors' estates in the main bankruptcy case and directly impacted other creditors of the Debtors. Those provisions comprised the majority of the provisions in the Settlement Agreement and included the following:

    a.    The Settlement Agreement allowed Wynn Las Vegas a general unsecured claim against the Debtors' estates in the amount of $3,543,412 in connection with a judgment that Wynn Las Vegas had obtained against Joseph Francis (i.e. the Settlement Agreement was allowing reverse piercing of the corporate veil of the Debtors to hold

1    them liable for debts of an individual).

2    b.    The Settlement Agreement allowed Wynn Las Vegas a general
3          unsecured claim against the Debtors' estates in the amount of
4          $2,354,856 in connection with a defamation judgment that Wynn Las
5          Vegas had obtained against Joseph Francis in Nevada (i.e. again,
6          reverse veil piercing was being allowed).

7    c.    The Settlement Agreement allowed Stephen Wynn a general
8          unsecured claim against the Debtors' estates in the amount of
9          $2,354,856 in connection with a defamation judgment that Stephen
10         Wynn had obtained against Joseph Francis in Nevada (i.e. again,
11         reverse veil piercing was being allowed).

12   d.    The Settlement Agreement allowed Stephen Wynn a general
13         unsecured claim against the Debtors estates in the amount of
14         $17,470,110 in connection with the slander judgment that Stephen
15         Wynn had obtained against Joseph Francis in California (again,
16         reverse piercing was being allowed).

17   e.    In the Settlement Agreement, Wynn Las Vegas and Stephen Wynn
18         agreed to subordinate $400,000 of their unsecured claims described
19         in (a)-(d) above to the claims of other unsecured creditors of the
20         Debtors.

21   f.    The Settlement Agreement allowed Wynn Las Vegas a general
22         unsecured subordinated claim against the Debtors estates in the
23         amount of $1,177,428  in connection with the defamation judgment
24         that Wynn Las Vegas had obtained against Joseph Francis in Nevada
25         (again,  reverse veil piercing was being allowed).

26   g.    The Settlement Agreement allowed Stephen Wynn a general
27         unsecured subordinated claim against the Debtors estates in the
28         amount of $1,177,428  in connection with the defamation judgment

6

1    that Stephen Wynn had obtained against Joseph Francis in Nevada

2    (again, reverse veil piercing was being allowed).

3    (See Copy of Settlement Agreement, see Exhibit F to Wynn Las

4    Vegas' Request for Judicial Notice—The Settlement Agreement is

5    attached as Exhibit A to such Exhibit F)

6        Wynn Las Vegas, in an attempt to mislead this Court and mischaracterize the nature and

7    extent of Appellant's participation in the California approval proceedings, points out in its

8    Motion for Dismissal of Appeal that Appellant filed a 30 page Opposition in the California

9    approval proceedings.[1] Wynn Las Vegas fails to mention that virtually all of such 30 page

10   Opposition was addressing and arguing against those provisions of the Settlement Agreement

11   described above (which directly impacted the main bankruptcy estate). The focus of Appellant's

12   arguments was that reverse piercing of the corporate veil was not recognized in either California

13   or Delaware (where Debtors were formed) and that therefore those provisions of the Settlement

14   Agreement allowing claims of Wynn Las Vegas and Stephen Wynn against the Debtors' estates

15   were not reasonable. Appellant reasonably believed that only those portions of the Settlement

16   Agreement directly involving the main bankruptcy case were properly before the California

17   bankruptcy court, and that the proper forum to discuss those aspects of the Settlement

18   Agreement impacting the Nevada adversary proceeding was the Nevada bankruptcy court.

19       The entirety of Appellant's discussion in the California approval proceeding of the

20   Nevada adversary proceeding and Appellant's claims to the trust funds involved therein was as

21   follows:

22       "As part of the proposed Settlement, the Debtors and
     Wynn are agreeing that the Debtors will receive $800,000

23   of the $1.9 million on deposit in an attorney trust account
     that is at issue in that litigation, and that Wynn will receive

24   the remaining $800,000 [sic]. However, the Debtors and
     Wynn are not the only parties to that litigation. Pepe Bus,

25   LLC is also a party to that litigation and was never served
     with a Summons or Complaint. The $1.1 million that the

26   Settlement Agreement agrees to give to Wynn actually

27

28       [1] Wynn Las Vegas Motion to Dismiss Appeal, Doc 29, Page 14 of 22, Line 20.

belonged to Pepe Bus, LLC. Pepe Bus, LLC assigned the right to such monies to GGW Global Brands, Inc. and GGW Global Brands, Inc. will be making an appearance in the Nevada alter ego litigation asserting its claims before the hearing on the Settlement. This precludes this court from approving the Settlement since the property of parties other than those who will be signatories to the Settlement Agreement are being dealt with by the proposed Settlement." See, Appellant's App., Vol. V, Pg. 895, Lines 5-15.

The California bankruptcy court, in its approval, pointed out that Appellant had not presented evidence supporting its claims to the trust fund monies.

The question then is whether Appellant was obligated to present evidence in the California bankruptcy court approval proceedings supporting its claims to the trust fund monies at issue in the Nevada adversary proceeding, and whether by failing to do so Appellant was collaterally estopped from thereafter pursuing its claims to the trust fund monies in the Nevada adversary proceedings and elsewhere.

The Ninth Circuit Bankruptcy Appeals Panel, in *In re Blixseth*, 2012 WL 3234205 (9th Cir. BAP 2012)[2], has clearly held that a F.R.B.P. Section 9019 bankruptcy court approval proceeding of a settlement agreement/stipulation relating to an adversary case cannot act to preclude non-signatory parties from having their day in court via a trial or a formal summary judgment hearing in situations where the notice of the approval proceeding did not expressly notify such parties that the approval proceeding was in essence a trial on their adversary case claims and that such parties had to present their evidence at such approval proceeding or be barred from pursuing their claims.. The BAP ruled that absent such an express notification, a party is under "no formal compulsion to marshall all its evidence in support of [its] claims" in the approval proceeding. *In re Blixseth*, 2012 WL 3234205 at *14 (9th Cir. BAP 2012) A copy of the *Blixsmith* opinion is attached to this Brief as Exhibit A.

In *Blixsmith*, the BAP stated:

---

[2] Although the case is unpublished, pursuant to F.R.A.P. §32.1 and 9th Circuit BAP Rule 8013-1, it may be cited for its persuasive value. Such a permitted use is also set forth in the footnotes to the case itself.

"Under the rules in Part VII of the Federal Rules of Bankruptcy Procedure, applicable to adversary proceedings, a contested judgment can be achieved by a default judgment, a dispositive summary judgment motion under Civil Rule 56, *incorporated* by Rule 7056, or by trial. Because none of these occurred here, the filing of the Stipulation and proposed order for declaratory judgment on Count I was procedurally flawed from the beginning." *In re Blixseth*, 2012 WL 3234205 at *13 (9th Cir. BAP 2012).

The BAP went on to state that,

"even if we were to consider the bankruptcy court's approval of the Stipulation as a sua sponte (or de facto) ruling on summary judgment, the procedural protections of notice are still lacking…There is no basis in the record to conclude that [the adversary proceeding party that was not a party to the Stipulation] 'knew or should have known' that the hearing on the approval of the Stipulation was in essence a de facto summary judgment or, alternatively a 'trial', and that by failing to set forth its evidence or bring its witnesses, it would forever waive its rights to present evidence on the disputed facts. Due process is not simply satisfied by serving notice of a hearing. The notice served must contain adequate information and the content must have been reasonably calculated to put [the adversary proceeding party that was not a party to the Stipulation] on notice that it was required to produce its witnesses and submit all its evidence [at the hearing] or be forever barred." *In re Blixseth*, 2012 WL 3234205 at *14-15 (9th Cir. BAP 2012).

In the present case, the Notice of Motion for the California Bankruptcy Court approval proceedings did not warn parties to the Nevada adversary proceeding and other recipients of the Notice that if they did not present evidence in support of their claims to the trust fund monies to the California Bankruptcy Court in response to such Notice that the recipients would be forever barred from pursuing their claims to the trust fund monies in the Nevada adversary proceeding or elsewhere under doctrine of collateral estoppel. See Appellant's Appendix, Vol. I, Tab E, Pgs. 64-65 for a copy of the Notice.

Therefore, under *Blixseth*, the proceedings in front of the California Bankruptcy Court were fatally flawed from a procedural due process standpoint and any ruling by the California

9

Bankruptcy Court regarding ownership of the monies in the attorney trust fund that were at issue in the Nevada adversary proceeding could not serve to preclude the Nevada adversary proceeding parties from pursuing their claims in the adversary case. Because Appellant did not present any evidence at the California Bankruptcy Court Settlement Agreement approval proceeding in support of its claims to the monies in the attorney trust fund, the statements in the approval ruling by the California Bankruptcy Court with respect to ownership of the trust fund had no collateral estoppel impact on Appellant or its right to have a trial or formal summary judgment proceeding in the adversary proceeding pending before the Nevada Bankruptcy Court.

As stated by the United States Supreme Court in *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 480-481 (1982):

> "We have previously recognized that the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue, *Allen v. McCurry,* 449 U.S., at 95, 101 S.Ct., at 415, *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971). 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.' *Montana v. United States, supra,* at 164, n.11, 99 S.Ct. at 979, n.11."

## C.     The Appeal is Not Moot

Wynn Law Vegas argues that the appeal is supposedly moot because the trust fund monies at issue have been disbursed.

Wynn Las Vegas argues that: "An order compelling the Trustee and GGW Marketing to return the portion of the Trust Funds that they received would create an administrative expense claim that would not be entitled to priority over other administrative claims of the estate. Thus, the extent to which such funds are returned would depend upon whether or not the Debtors' estates

1  are solvent.[3]"

2      First of all, such an argument ignores that over half the trust funds were distributed to

3  Wynn Las Vegas and certainly the court can order that Wynn Las Vegas pay back those funds.

4  Secondly, with respect to the portion of the trust funds distributed to the Debtors, even if one were

5  to accept, for the sake of argument, Wynn Las Vegas' assertion that an order to Debtors to repay

6  the ill-gotten trust fund monies would merely constitute a non-priority administrative expense

7  (which Appellant disputes), whether Debtors will or will not have enough money to pay has not

8  yet been determined and therefore does not currently render the appeal moot.  Third, Appellant

9  would not necessarily have to go through an administrative claim to get back the trust fund

10  monies that belong to it, Appellant could seek a turn-over of the Appellant's property. Each one of

11  the above reasons is sufficient for the appeal not to be moot.

12      Similarly, the fact that the Settlement Agreement has been consummated does not make

13  the appeal moot. Consummation of the Settlement Agreement entailed distribution of the trust

14  fund monies (which as previously discussed, can be returned), dismissal without prejudice of the

15  Debtors (and so Debtors can again be made part of the litigation), and remand of the case to state

16  court (which case can be removed back to federal court). The situation is a far cry from that of

17  confirmation of a reorganization plan that cannot easily be unwound.

18      Therefore, the present appeal is not moot.

19      **D.**    **GGW Brands, Inc. is a Proper Party to the Litigation**

20      Wynn Las Vegas argues that the appeal should be dismissed because GGW Brands, Inc.

21  supposedly is not a proper party to the litigation.  GGW Brands, Inc. filed an Answer,

22  Counterclaim and Cross-Claim in the adversary proceeding, thereby becoming a party.

23  Appellant's App. Vol. IV, Tab F, pgs. 685-688.  Its pleadings were not struck by the Bankruptcy

24  court and no party moved to strike its pleadings.

25      As successor in interest to named Defendant Pepe Bus, LLC, GGW Brands, Inc. had the

26  right to step into the shoes of Pepe Bus, LLC and file an Answer without seeking intervention.

27

28     [3] Wynn Las Vegas Motion to Dismiss (Doc. 29), pg. 19 of 22, Lines 18-21

*See, e.g. McCarthy Western Constructors, Inc. v. Phoenix Resort Corp.*, 951 F.2d 1137, 1141-1142 (9th Cir. 1991)(Successor in interest to a named party in state court litigation deemed permitted to remove case to federal court without need for such successor in interest to first seek formal joinder or intervention in state court action-- successor in interest to a named party becomes a party to the case as a matter of law); *Weil et al v. US Bank et al,* 2000 WL 33712215 (Bankr Idaho 2000)(Educational Management Corporation permitted to file Answer and become party in adversary proceeding as successor in interest to named Defendants Wells Fargo, MHESAC, and Sallie Mae Servicing Corporation, without seeking intervention).

Even if one were to assume for the sake of argument that GGW Brands, Inc. should have brought a motion to intervene before filing the Answer, Counterclaim and Cross-Claim, GGW Brands, Inc., under F.R.C.P. 24(a)(2) (made applicable to bankruptcy adversary proceedings by F.R.B.P. 7024), was entitled to intervene as a matter of right (since it owned the property at issue in the adversary proceeding). Therefore its failure to file a motion for such intervention as a matter of right prior to filing the Answer, Counterclaim and Cross-Claim is not fatal to its standing as a party.

It should also be noted that Wynn Las Vegas in wrong in its assertion that because Pepe Bus, LLC (predecessor in interest to Appellant) had been voluntarily dissolved on March 12, 2012 it did not need to be served with the Summons and Complaint in the adversary matter. Pepe Bus, LLC was a Montana limited liability company and under the Montana Limited Liability Act a dissolved limited liability company still continues to exist for the purpose of defending against lawsuits. Montana Code Annotated §35-8-909.

1

2                                    IV.  **CONCLUSION**

3          For the reasons set forth above, this Court should deny the Motion to Dismiss by Wynn

4    Las Vegas.

5    DATED: October 18, 2013

6                                        By: _____

7                                            Kenneth E. Lyon, III
                                             Attorney for GGW Global Brands, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A

2012 WL 3234205
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Appellate Panel
of the Ninth Circuit.

In re Edra D. BLIXSETH, Debtor.
Western Capital Partners, LLC, Appellant,
v.
Atigeo LLC; Xpatterns, LLC; Richard J. Samson,
Chapter 7 Trustee; Edra D. Blixseth; Opspring,
LLC; Blxware, LLC; Joseph V. Womack,
Trustee for the Chapter 7 Estate of Matthew
Crocker; HMJZ, LLC; Heather Sandoval;
Michael Sandoval; Julie Barve, Appellees.

Nos. BAP No. MT–11–1574–JuHPa, BAP No. MT–
11–1575–JuHPa. *   |   Bankruptcy No. 09–60452.
|   Adversary No. 09–00105.   |   Argued and
Submitted on July 20, 2012.   |   Filed Aug. 9, 2012.

Appeal from the United States Bankruptcy Court for the
District of Montana. John L. Peterson, Bankruptcy Judge,
Presiding, Ralph B. Kirscher, Bankruptcy Judge, Presiding.

**Attorneys and Law Firms**

Robert W. Hatch, II, Esq. of Hatch Ray Olsen LLC argued
for appellant.

Western Capital Partners, LLC; David Brian Cotner, Esq. of
Datsopoulos, MacDonald & Lind, P.C. argued for appellee
Richard J. Sampson, Chapter 7 trustee; Brian Chung Park,
Esq. of Stoel Rives LLP argued for appellees Atigeo, LLC and
xPatterns, LLC; Roland Karim Tellis, Esq. of Baron & Budd,
P.C. appeared for appellees Michael Sandoval and Heather
Sandoval and HMJZ, LLC.

Before: JURY, HOLLOWELL, and PAPPAS, Bankruptcy
Judges.

**Opinion**

**MEMORANDUM** **

**\*1**  In BAP No. 11–1574, secured creditor-appellant,
Western Capital Partners, LLC ("WCP"), appeals from
the bankruptcy court's order approving a settlement under

Rule 9019 [1] among appellees, chapter 7 trustee, Richard
J. Samson ("Samson" or "Trustee"), and Michael Sandoval
("Sandoval"), xPatterns, LLC ("xPatterns") and Atigeo, LLC
("Atigeo") (collectively, we refer to Sandoval, xPatterns and
Atigeo as the "Atigeo Parties").

The bankruptcy court's approval of the settlement was
contingent on its approval of a stipulated declaratory
judgment on Count I in an adversary proceeding brought
by Atigeo and xPatterns (collectively, "Plaintiffs") against
the Trustee, Edra Blixseth ("Edra" or "Debtor") and others,
and to which WCP joined as a party defendant. In BAP No.
11–1575, WCP appeals the bankruptcy court's entry of the
stipulated declaratory judgment on Count I.

**Summary of the Dispute**

Plaintiffs' adversary proceeding against Edra and her estate
was functionally the extension of a prepetition state court
lawsuit filed by the Plaintiffs against Edra and others
concerning her numerous alleged breaches of a March 31,
2007 letter agreement (the "Letter Agreement") and a related
$8 million note (the "Note") executed in Plaintiffs' favor in
Edra's favor. Due to the alleged breaches, Plaintiffs sought
alternative forms of relief in their complaint. In Count I they
sought a declaration that the Letter Agreement was repudiated
and unenforceable and in other Counts sought offsets and
damages for breach of contract if the agreement was found
enforceable between the parties.

After a mediation, the Trustee and Atigeo Parties stipulated
to facts which established that Edra had breached the Letter
Agreement resulting in its repudiation (the "Stipulation").
Although WCP had joined the adversary as a party defendant,
it was not a party to the Stipulation.

WCP's interest in the adversary proceeding stemmed from
its security interest in Edra's contract rights under the Letter
Agreement, including the right to collect under the Note.
WCP's contract rights and right to the receivable were not
property of Edra's estate under the holding in *Samson v. W.
Capital Partners, LLC, (In re Blixseth),* 454 B.R. 92 (9th
Cir.BAP2011) *aff'd* 684 F.3d 865, 873 (9th Cir.2012). If the
Letter Agreement was declared repudiated and unenforceable
under Count I, WCP's rights under the Letter Agreement,
which were derivative of Edra's, became worthless.

In contrast, repudiation of the agreement paved the way for the Trustee to pursue certain tort claims against the Atigeo Parties which existed in March 2007, but were subject to a broad release provision contained in the Letter Agreement. Those tort claims, which were not yet ripe for adjudication until repudiation of the Letter Agreement was established under Count I, were the subject of the settlement under Rule 9019.

The Trustee and Atigeo Parties sought approval of the Stipulation and, without a hearing, the bankruptcy court granted the requested relief and entered judgment. The next day, at WCP's request, the court issued an order holding the judgment in abeyance and set the matter for hearing on September 7, 2011 (the "September 7th Hearing"). The September 7th Hearing on the Stipulation was combined with the hearing on the settlement.

**\*2** The Trustee was the only witness at the September 7th Hearing. After the hearing, the bankruptcy court took the matters under advisement. The parties submitted additional briefs and proposed Findings of Fact and Conclusions of Law. In a Memorandum Decision and Order, the court approved the Stipulation, entered a declaratory judgment on Count I and approved the settlement of the estate's tort claims against the Atigeo Parties for $1.25 million. WCP moved for reconsideration of the court's decisions. After a hearing, the bankruptcy court denied WCP's reconsideration requests in a Memorandum Decision.

WCP's primary challenge on appeal is to the bankruptcy court's entry of the stipulated declaratory judgment on Count I. WCP argues that the bankruptcy court's decision approving the judgment was plagued by numerous procedural errors, including, among others, that the bankruptcy court lacked jurisdiction to enter judgment in the adversary proceeding on WCP's contractual claims against nondebtors, that the court erred by treating the hearing on the approval of the Stipulation as a de facto motion for summary judgment in the adversary proceeding without procedural protections, and that the court deprived WCP of procedural due process by approving the Stipulation through the guise of a Rule 9019 settlement. As a result, WCP seeks reversal of the declaratory judgment on procedural due process grounds.

After a review of the extensive record provided, we conclude that the bankruptcy court had jurisdiction to enter judgment on Count I with respect to all parties involved in the adversary proceeding. However, for the reasons discussed below, we

agree that WCP was denied procedural due process before the court entered the declaratory judgment. Accordingly, we VACATE the judgment and orders on appeal and REMAND for further proceedings.

## I. FACTS

### A. Edra's Relationship With the Atigeo Parties

Sometime in 2006, Sandoval, the CEO for Atigeo and xPatterns,[2] persuaded Edra to invest $15 million in xPatterns. Edra invested $10 million and allegedly agreed that xPatterns could loan $5 million of that amount to Sandoval so that he could purchase a home in Kirkland, Washington. In early 2007, a disagreement developed between Sandoval and Edra about the terms of xPatterns' loan to Sandoval.[3] In addition, Edra was unable to make the final $5 million investment in xPatterns.

Edra had also invested $8 million in Opspring, LLC ("Opspring"), a start-up company formed to develop technology used by governments. Opspring was a subsidiary of Atigeo and owned by Sandoval. Opspring had hired Dennis Montgomery ("Montgomery") to develop certain products. Before working for Opspring, Montgomery had been employed by eTreppid Technologies, LLC ("eTreppid"). eTreppid filed an action against Opspring alleging, among other things, that Montgomery had converted eTreppid property, interfered with and misappropriated eTreppid business relationships, and misappropriated eTreppid trade secrets for Opspring's benefit.

**\*3** While this litigation was pending, Edra demanded the return of her full investment of capital in xPatterns and, in exchange, she offered to relinquish her ownership interest in xPatterns and obtain full ownership of Opspring. To resolve these disputes, the parties negotiated and entered into the Letter Agreement.

The parties agreed to convert the $10 million equity interest that Edra (and her family members) held in xPatterns into a $10 million debt obligation from xPatterns to the Blixseth family. The agreement also provided that Edra would assume complete ownership of Opspring, including all liabilities. In exchange for the conversion of Edra's equity position in xPatterns into a debt position, and the transfer of all ownership in Opspring to Edra, xPatterns and Atigeo required certain performance from Edra and Opspring, which Edra would control.

In re Blixseth, Not Reported in B.R. (2012)

The terms of the Letter Agreement required Opspring[4] to indemnify, defend, and hold harmless the Atigeo Parties with respect to all claims, causes of action, liability and damages arising out of or related in any way to the eTreppid litigation or Opspring's relationship with Montgomery. Edra also agreed that Opspring would pay Atigeo quarterly performance fees equal to 5% of Opspring's revenue (up to a maximum of $15 million). The first $5 million of this 5% royalty was to be used to off-set the debt obligations imposed upon xPatterns by Edra in the Letter Agreement.

Finally, the Letter Agreement required xPatterns to sign a promissory note for $10 million payable to Edra. xPatterns satisfied the first $2 million owed through agreed upon set-offs and a payment of $382,568 on March 10, 2008. The remaining $8 million, $5 million of which was unconditionally guaranteed by Sandoval, was never paid.

Following the execution of the Letter Agreement, Edra allegedly induced third parties to breach confidentiality agreements that they had with Atigeo and provide her and Opspring with its proprietary information. Edra also failed to cause Opspring to pay performance fees or defend the Atigeo Parties in the eTreppid litigation.

On September 23, 2008, Atigeo and xPatterns filed an action in the Washington Superior Court against Edra and others that related to the parties' rights and responsibilities under the Letter Agreement (the "Washington Action").[5]

**B. Edra's Relationship with WCP**
After the execution of the Letter Agreement, Edra guaranteed a $13,650,000 loan made to her son by WCP and pledged certain personal property as collateral for the loan. WCP held a perfected security interest in virtually all of Edra's lienable personal property pursuant to a security agreement executed by her on June 5, 2007, in favor of WCP. Included in WCP's security agreement were, among other things, all of Edra's contractual rights in the Letter Agreement and the related Note.

**c. Bankruptcy Events**
On March 26, 2009, Edra filed for chapter 11 relief. In Schedule B, Edra listed the receivable of $8 million due from xPatterns/Sandoval. Edra listed eTreppid as her largest unsecured creditor owed $20 million. On May 29, 2009,

Edra's case was converted to chapter 7 and Samson was appointed the trustee.

**\*4** On October 2, 2009, Atigeo and xPatterns filed unliquidated proofs of claim ("POC") in Edra's case. The POCs were identical and primarily based on the allegations in the Washington Action and Edra's breaches of the Letter Agreement.

### The Adversary Complaint

On December 7, 2009, Atigeo and xPatterns filed an adversary complaint against Samson, Edra, Opspring, Blxware, and others.[6] The factual allegations and demands set forth in the complaint were virtually identical to those alleged in the POCs. In total, the Plaintiffs alleged sixteen Counts with fifteen of those Counts seeking offsets or damages arising under the Letter Agreement and other relief.[7] If the Plaintiffs succeeded on Count I, entitled "Declaratory Judgment Regarding Repudiation of Letter Agreement," and repudiated the Letter Agreement, the remaining Counts asserted in the complaint became moot. Plaintiffs filed a copy of the adversary complaint in the main bankruptcy case.

### The Trustee's Answer, Counterclaim and Third–Party Complaint

On February 10, 2010, the Trustee filed an answer, a counterclaim against Plaintiffs, and a third-party complaint against Sandoval, Heather Sandoval, and HMJZ LLC (the "Sandoval Parties"). In his counterclaim and third-party complaint, the Trustee asserted thirteen Counts based on Sandoval's alleged conversion of Edra's $5 million investment in xPatterns that he used without authority, or Edra's consent, to purchase the real property in Kirkland, Washington and his numerous misrepresentations to Edra regarding the technology owned by Atigeo and xPatterns. In Count I of the counterclaim and third-party complaint, the Trustee alleged that due to the fraudulent representations made by the Atigeo Parties, Debtor was induced to enter into the Letter Agreement. As a result, the Trustee requested a declaratory ruling that the Letter Agreement was void.[8]

The Sandoval Parties moved to dismiss the Trustee's third-party complaint on res judicata grounds, contending that the

claims and allegations were identical to those Edra previously asserted against them in her state court action, *Blixseth v. Atigeo, LLC et al.* (Case No. 08–2–18054–4). That action was dismissed with prejudice on the basis that Edra's claims were premature since no money was yet due on the Note. The Sandoval Parties further alleged that the Trustee's fraud claims failed to comply with Civil Rule 9(b) and the non-fraud claims failed to state a claim for relief. Plaintiffs moved to dismiss the counterclaim on essentially the same grounds. The bankruptcy court denied the motions and gave the Trustee until July 6, 2010 to amend. On July 6, 2010, the Trustee filed his amended counterclaim and third-party complaint.

### The Trustee's Motion For Second–Amended Counterclaim and Third–Party Complaint And Motion to Bifurcate the Trial

On August 31, 2010, the Trustee moved to file a second amended counterclaim and third-party complaint because he did not believe he had "active tort claims" against the Atigeo Parties due to the broad releases in the Letter Agreement. The Trustee admitted that these contingent tort claims did not exist unless the Plaintiffs prevailed on their declaratory relief action to repudiate the Letter Agreement under Count I in the adversary complaint. Hr'g Tr. 9:15–19, Oct. 12, 2010.

 **\*5** Also on August 31, 2010, the Trustee filed a Motion to Bifurcate the trial in the adversary proceeding pursuant to Rule 7042.[9] The Trustee sought to have the court first determine whether the Letter Agreement was unenforceable under Count I and, if so, to then try the Trustee's dormant, or "contingent" tort claims.

The Sandoval and Atigeo Parties opposed the Trustee's motions. They opposed the motion to bifurcate on the grounds, among others, that the facts and issues relevant to the formation of the Letter Agreement and the parties' performance or nonperformance thereunder were inextricably intertwined with the facts and legal theories underlying the Trustee's "contingent" tort claims. The Parties maintained that, if anything, the Trustee's motion to bifurcate demonstrated that his tort claims would only "stay alive" in the event the bankruptcy court invalidated the Letter Agreement. This supported, the Parties' argued, dismissal of the Trustee's "contingent" tort claims, but did not justify piecemeal litigation, both of which revolved around materially similar facts.

On October 12, 2010, the court heard the Trustee's motions, along with other matters. With counsel for the Trustee, the Atigeo Parties, the Sandoval Parties, and WCP present, the bankruptcy court questioned whether Count I could be "dealt with on summary judgment ." Hr'g Tr. 10:7–8, Oct. 12, 2010. Counsel for the Sandoval Parties answered that it "would depend on, obviously, the discovery ." *Id.* at 10:16–17.

The bankruptcy court ultimately denied the Trustee's motion to bifurcate without prejudice and denied the Trustee's motion to amend. The court found that the Trustee's tort claims were not "ripe" and, therefore, ruled that the Trustee's original counterclaim and third-party complaint filed February 1, 2010, were the operative pleadings.

After the hearing, the Trustee filed a notice of dismissal of his original pleadings without prejudice. The bankruptcy court dismissed the Trustee's counterclaim and third-party complaint by order entered on October 13, 2010.

### WCP's UCC Foreclosure Sale

On March 9, 2010, WCP submitted a Notice of UCC Public Sale that certain collateral was to be sold at a public sale on March 22, 2010. WCP's notice included the sale of all accounts receivable and/or contract rights of Edra D. Blixseth in which WCP had a perfected security interest.

WCP had the right to foreclose due to the fact that Edra had failed to timely file her Statement of Intention under § 521. Therefore, under § 362(h), all her personal property secured by WCP's debt was released from the automatic stay. *See In re Blixseth,* 684 F.3d 865.

On March 19, 2010, three days prior to the sale, Atigeo and xPatterns filed a Notice of Potential Impact in Debtor's main bankruptcy case, which provided notice of their allegation that Edra had failed to meet her obligations under the Letter Agreement.

At the March 22, 2010 sale, WCP purchased, among other personal property assets, the contract claims and accounts receivable arising out of the Letter Agreement for $250,000.

### WCP'S Motion to "Intervene"

**\*6** On March 29, 2010, WCP filed an Unopposed Motion to Intervene in the adversary proceeding. [10] The bankruptcy court granted the motion by order entered March 30, 2010.

WCP later filed a motion to file a third-party complaint. The bankruptcy court heard WCP's motion on October 12, 2010. During that hearing, WCP stated that it had foreclosed on Edra's contract rights under the Letter Agreement and, as owner of the contract rights, sought to file a third-party complaint against the Atigeo Parties to collect on the Note. At that time, WCP's counsel affirmed that "we do not have any tort claims related to this matter, and those would still rest with the trustee." Hr'g Tr. 46:22–23, Oct. 12, 2010.

Also at that hearing, the parties and the court discussed whether WCP should file an answer to the complaint given that it had stepped into the shoes of the Trustee on the contract claims after it had foreclosed on Edra's contract rights. WCP maintained that it would make more sense for the Plaintiffs' complaint to actually assert what claims it had against WCP so that WCP could answer the complaint in a clear way. In the end, the bankruptcy court authorized WCP to answer the complaint as a defendant by stating its interest in the litigation and answering whatever Counts it thought appropriate. Plaintiffs never amended their complaint to include reference to WCP.

#### WCP'S Answer and Third–Party Complaint

On November 3, 2010, WCP filed an answer and third-party complaint against the Atigeo Parties.

WCP's answer included a Preliminary Statement on Procedure in which it stated that it was an interested party due to its status as a secured creditor of the Debtor and as the party which foreclosed on certain interests of Edra which were the subject of the underlying complaint. In its answer, WCP stated that it was unable to respond to the vast majority of allegations set forth in the adversary complaint for lack of sufficient information. [11] In the third-party complaint, WCP sought to enforce the Letter Agreement and collect the $8 million due under Note, including $3 million from Sandoval due on his guarantee. On December 28, 2010, WCP filed notice that it was dismissing, without prejudice, all claims against Atigeo. [12]

#### The Mediation

All parties to the adversary proceeding participated in a private mediation on June 16, 2011. During that mediation, the Trustee and the Atigeo Parties negotiated a framework for a possible settlement with respect to Count I in the adversary and the Trustee's contingent tort claims. WCP's participation in the mediation was limited. Hr'g Tr. 28:10–11, Sept. 7, 2011.

#### The Scheduling Order

Pursuant to the parties' stipulation and proposed amended scheduling order, the bankruptcy court entered an order on June 22, 2011, extending certain pretrial dates in connection with the adversary. The court declined however to reschedule the trial which was set for September 26–30, 2011.

#### WCP's Discovery in the Adversary

**\*7** On March 4, 2011, WCP deposed Sandoval for a full day and that deposition was continued. On March 7, 2011, WCP responded to Sandoval's Requests for Admission. In that response, WCP stated that it succeeded to Blixseth's rights under the Letter Agreement and was not involved in any way with the facts leading to the Letter Agreement, the execution, performance or anything related to the Letter Agreement. Therefore, WCP had no personal knowledge of the events surrounding the Letter Agreement.

On August 10, 2011, WCP took the deposition of the Trustee. WCP also took the depositions of Alan Annex (Edra's attorney in her negotiations with the Atigeo Parties) and Nick Rhodes (Edra's advisor in technology companies).

#### The Stipulation For Entry of Declaratory Judgment On Count 1 of Plaintiffs' Complaint

On July 20, 2011, the Trustee filed the Stipulation and proposed order entering declaratory judgment On Count 1 of Plaintiffs' Complaint in the adversary. [13] The Stipulation was not accompanied by a motion or served on WCP. However, one day prior, the Trustee's counsel notified WCP's counsel by email that the Trustee had entered into the Stipulation with the Atigeo Parties on Count I.

In re Blixseth, Not Reported in B.R. (2012)

The Stipulation was based on the Trustee's investigation into the parties' performance under the Letter Agreement. The Trustee discovered that Edra and the entities she controlled breached the Letter Agreement in various ways, including: (1) her failure to direct Opspring to pay xPatterns' performance fees owed, despite Opspring earning revenue and despite Sandoval's reliance on anticipated performance fees; (2) her failure to keep the Letter Agreement confidential; (3) her failure to keep trade secrets and intellectual property of Sandoval and Atigeo confidential; and (4) Opspring and Blxware's failure to defend and indemnify the Atigeo Parties in the eTreppid litigation. As a result of the investigation, the Trustee determined that Edra's estate could not prevail in a defense of Count I. Hr'g Tr. 69–71, Sept. 7, 2011. Thus, Plaintiffs and the Trustee stipulated to the entry of a declaratory judgment on Count 1 of the adversary complaint such that the Letter Agreement and all of its terms and instruments were repudiated. [14] The bankruptcy court entered the order approving the Stipulation one day later on July 21, 2011.

### WCP's Emergency Motion to Vacate the July 21, 2011 Order

On the same day that the court entered the order, WCP filed an emergency motion to vacate or in the alternative reconsider the July 21, 2011 order approving the Stipulation. WCP argued that it would be a denial of due process to approve the Stipulation because the Trustee had no right to stipulate away the rights of third parties.

On July 22, 2011, the bankruptcy court rescinded its order and provided WCP with notice of a hearing:

> The Court's Order entered July 21, 2011, shall be held in abeyance and a hearing on approval of the Stipulation [for] Declaratory Judgment on Count I of Plaintiff's Complaint ... at Dkt 240 and on [WCP]'s Emergency Motion to Vacate or in the alternative Reconsider July 21, 2011 Order [Approving] Stipulation filed July 21, 2011, at dkt. 242 shall be held Wednesday, September 7, 2011, at 9:00 a.m.

### The Trustee's Settlement With The Atigeo Parties

*8  Contemporaneous with the negotiation of the Stipulation, the Trustee also negotiated a settlement with the Atigeo Parties relating to the estate's tort claims against them, which would become ripe upon the repudiation of the Letter Agreement. Those claims consisted of claims for alleged misrepresentations, fraud, conversion, negligence, and others which were pled in the Trustee's original counterclaim filed February 1, 2010, and later dismissed.

On July 20, 2011, the Trustee filed a "Motion for an Order Approving the Settlement with [Plaintiffs] and Third Party Defendant Michael Sandoval" (the "9019 Motion"), discussing the four factors set forth in *Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1381 (9th Cir.1986). Attached to the motion were the affidavits of Edra and Sandoval. The next day, the Trustee filed a notice of the motion and notice of opportunity to respond and request a hearing and a proof of service.

The Atigeo Parties filed a Joinder Motion to approve the settlement. WCP filed a brief in opposition.

On July 28, 2011, the bankruptcy court provided notice to all parties in the main case, including WCP, that "a hearing will be held on [the Atigeo Parties'] Joinder Motion for Approval of Settlement." [15]  On August 5, 2011, the Court issued an Order stating that a "hearing on the Trustee's Motion for Order approving Settlement with Plaintiffs Atigeo LLC and xPatterns LLC and Third Party Defendant Michael Sandoval" will be held on "Wednesday, September 7, 2011." The Trustee and WCP each filed Lists of Exhibits and Witnesses prior to the September 7th Hearing in the main bankruptcy case and in the adversary proceeding. [16]

### The Atigeo Parties' Request for a Pretrial Conference

On July 25, 2011, the Atigeo Parties filed a Request for a Pretrial Conference. The request set forth several reasons why a pretrial conference was necessary, including the proximity of the September 7th Hearing on approval of the settlement to the September 26, 2011 trial date in the adversary. The Atigeo Parties noted that if the settlement was approved by the court, the Letter Agreement, and all its terms and instruments, would be invalid and unenforceable as a matter of law. As a

result, they would dismiss their complaint against the estate and WCP's third-party complaint seeking to enforce the terms of the Letter Agreement would be rendered moot.

On July 26, 2011, the bankruptcy court entered an order suspending all unexpired pretrial deadlines and the trial date in the adversary proceeding and provided notice to the parties that a pretrial conference would be held Wednesday, September 7, 2011.

### The September 7, 2011 Hearing

On September 7, 2011, Judge Peterson presided over the hearing on the approval of the Stipulation for declaratory judgment on Count I of Plaintiffs' complaint, WCP's emergency motion to vacate the Stipulation and the Trustee's 9019 Motion. [17] The Trustee and his counsel, WCP's counsel and the Atigeo Parties' counsel attended. The Trustee was the only witness.

**\*9** The Trustee submitted the affidavit of Edra in which she stated, under penalty of perjury, that Opspring did not pay any performance fees owed under the Letter Agreement and that Opspring did not defend and indemnify the Atigeo Parties in the eTreppid litigation despite having received a request to do so. The affidavit of Michael Sandoval mostly reiterated Edra's rendition of the facts showing that she breached the Letter Agreement.

WCP objected to the Trustee's conclusions drawn from his reading of Edra's and Sandoval's affidavits on the ground that the affidavit[s] contained hearsay. The bankruptcy court overruled WCP's objection.

WCP examined the Trustee at length, including detailed cross-examination regarding the Trustee's factual investigation related to Count I and the events that led to the settlement. WCP objected to the introduction of certain evidence, questioned the Trustee on several pieces of evidence, and introduced its own documentary evidence. However, the record shows that WCP produced no witnesses or other evidence that was contrary to the affidavit testimony of Edra and Sandoval.

At the end of the hearing, the bankruptcy court gave the parties fifteen days to file proposed findings of fact and conclusions of law, along with briefs in support of their respective positions. The Atigeo parties, together with the Trustee, and WCP submitted the requested papers.

In WCP's closing brief, WCP argued that it was entitled to a full and fair opportunity to complete discovery. WCP also made an offer of proof that Alan Annex, Edra's attorney and the drafter of the Letter Agreement, expressly contradicted the factual conclusions set forth in the Stipulation. WCP further stated that the trial was scheduled for September 26, 2011 and discovery was to be completed by August 31, 2011. WCP argued that it had outstanding document requests and had served subpoenas and there were at least nine depositions to be completed, including Edra's.

On September 27, 2011, after considering the evidence presented at the September 7th Hearing, and reviewing the parties' briefs, the bankruptcy court issued Findings of Fact and Conclusions of Law [18] and entered an order approving the settlement and Stipulation in Debtor's main case.

On September 28, 2011, the court entered an order approving the Stipulation and entered a separate judgment in favor of Plaintiffs' on Count I in the adversary proceeding. The bankruptcy court concluded that the Letter Agreement and all of its terms and instruments were repudiated and thus were invalid and unenforceable as a matter of law.

### WCP'S Motions For Reconsideration

On September 29, 2011, WCP moved for reconsideration of the bankruptcy court's September 27, 2011 order approving the settlement and Stipulation under Civil Rule 60(b)(1), *incorporated by,* Rule 9024. WCP contended the order contained fundamental mistakes of law and fact. The order stated that WCP failed to present any evidence at the September 7, 2011 hearing but, WCP argued, there was no rule of procedure that required WCP to present any evidence. Therefore, WCP maintained that the effect of the court's order approving the Stipulation was to deny WCP its fundamental rights of due process because no evidentiary hearing took place. WCP also maintained that the Trustee had no interest in Count I because WCP had foreclosed on Edra's contract rights under the Letter Agreement which divested the estate of any remaining interest that it may have had in the Letter Agreement or Count I. In this regard, WCP asserted that the Trustee was stipulating not to his own legal rights, but legal rights of others.

**\*10** Finally, WCP pointed out that on September 16, 2011, the court ordered Edra to be made available for a deposition prior to September 30, 2011, to address statements made in her affidavit to support the Stipulation and declaratory judgment. WCP contended that the court cut off its ability to depose Edra when it entered the September 27, 2011 order the day before Edra's deposition was scheduled to take place in California.

On October 10, 2011, WCP filed a Motion to Reconsider the court's initial July 21, 2011 order approving the Stipulation prior to a hearing and Judge Peterson's September 28, 2011 judgment.

The Trustee and the Atigeo Parties opposed WCP's motions. In connection with the hearing, the Trustee filed an Exhibit List showing emails back and forth between the parties regarding further discovery and pertaining to Edra's deposition. The Trustee's supplemental Exhibit List showed that WCP was to complete Edra's deposition by September 30, 2011, which it did not do.

WCP sought an expedited hearing on the motions to reconsider, which the bankruptcy court granted. While WCP's motions were pending, WCP filed notices of appeal on the Stipulation and settlement on October 10 and 11, 2011, respectively.

### The October 26, 2011 Hearing

On October 26, 2011, the bankruptcy court held a hearing on WCP's motions for reconsideration. At the hearing, WCP's counsel stated that he did not know the September 7th Hearing was a trial. Hr'g Tr. 74:8–25, Oct. 26, 2011. He further stated that he understood the September 7th Hearing was an evidentiary hearing on the 9019 Motion in the main bankruptcy case, not a trial in the adversary proceeding. *Id.* Finally, he stated on the record that "everybody anticipated that this was a pretrial conference on the adversary. We understood, certainly understood that this was a hearing on the, an evidentiary hearing on the 9019 order, but we did not prepare for trial, we did not bring our witnesses, we did not subpoena witnesses ." *Id.* at 83:15–19.

WCP again made an offer of proof that Alan Annex, Edra's lawyer, would testify, among other things, that it was the intent of the parties for the Atigeo Parties to get Edra's membership interest in xPatterns in exchange for a

repayment of $10 million investment and that repayment was not conditioned upon any other obligations in the Letter Agreement. *Id.* at 76:17–25; 77:1–17. WCP also argued that the court should hear from Nick Rhodes, an employee of Opspring and Blxware, and Sandoval, who had been deposed. *Id.*

On November 10, 2011, the bankruptcy court entered a Memorandum of Decision and Order denying WCP's motions for reconsideration. The court found that the bankruptcy court's orders made it clear that the September 7th Hearing was an evidentiary hearing on the approval of the Stipulation. The court concluded that WCP's counsel's misunderstanding about the nature of the hearing and failure to present evidence was not grounds for reconsideration. In addition, the bankruptcy court found that WCP was not a stranger to the adversary proceeding and indeed had been an active participant and had ample notice of the September 7th Hearing. The court concluded that by participating in the adversary (filing an answer, filing a counterclaim and a third-party complaint and by being a party to the stipulated scheduling order), WCP waived and forfeited its right to challenge the court's authority to decide all claims asserted in the adversary proceeding, including Plaintiffs' Count I seeking repudiation of the Letter Agreement.

**\*11** With respect to the 9019 Motion, the court found that WCP failed to show the settlement was not fair and equitable as required under *A & C Properties.*

### II. JURISDICTION

WCP contends that the bankruptcy court did not have jurisdiction over its claims against the Atigeo Parties because those claims were state law contract-based claims and between two nondebtor parties. We address WCP's jurisdictional argument below. WCP does not challenge our jurisdiction over this appeal under § 28 U.S.C. § 158.

### III. ISSUES

A. Whether the bankruptcy court had jurisdiction to enter the stipulated declaratory judgment on Count I in the adversary with respect to all parties, including WCP;

B. Whether the bankruptcy court's proceedings in connection with its approval of the stipulated declaratory judgment on

In re Blixseth, Not Reported in B.R. (2012)

Count I in the adversary denied WCP procedural due process; and

C. Whether the bankruptcy court abused its discretion in approving the Trustee's 9019 Motion when the underlying settlement eliminated the causes of action that WCP had asserted against the Atigeo Parties in its third-party complaint in the adversary.

## IV. STANDARDS OF REVIEW

We review questions regarding jurisdiction de novo. *Durkin v. Benedor Corp. (In re G.I. Indus. Inc.)*, 204 F.3d 1276, 1279–80 (9th Cir.2000).

We also review de novo whether a bankruptcy court's proceedings violated a party's right to procedural due process. *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir.2009).

We review for abuse of discretion the bankruptcy court's approval of a settlement. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir.1986). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir.2011).

## V. DISCUSSION

### A. Jurisdiction
WCP asserts multiple arguments challenging the bankruptcy court's jurisdiction to render a judgment on Count I that affected its rights against the Atigeo Parties. None have merit.

The adversary proceeding embodies the demands set forth in the Plaintiffs' POCs filed in Edra's bankruptcy case. Therefore, resolution of Count I in the adversary will also resolve the allowance or disallowance of the Plaintiffs' unliquidated POCs. The allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B) regardless of whether resolution of the matter involves application of state law. *In re G.I. Indus. Inc.*, 204 F.3d at 1279–80.

Bankruptcy courts also have jurisdiction over proceedings that are not core, but "related to" a bankruptcy case. The test for determining the scope of "related to" jurisdiction is whether:

> the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

**\*12** *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

Whether the Letter Agreement is enforceable or unenforceable under Count I is directly related to Edra's potential liability for breach of contract damages as alleged in other Counts in the complaint. WCP's UCC foreclosure sale did not eliminate the estate's potential liability for Edra's breaches of the Letter Agreement because, as a secured creditor, WCP did not assume any duty or liability on behalf of Edra or her estate. *See* U.C.C. § 9–402 ("Secured Party Not Obligated on Contract of Debtor or in Tort."). Therefore, Edra's estate would incur liability for breach of contract damages if the adversary went to trial on Count I and the Letter Agreement ultimately found enforceable. Because of the estate's potential liability, the litigation over the enforceability of the Letter Agreement was not, as WCP argues, only between WCP and the Atigeo Parties, two nondebtor parties. In addition, the bankruptcy court's decision on the enforceability of the Letter Agreement was inextricably intertwined with the existence of the estate's tort claims against the Atigeo Parties. If the Letter Agreement was found unenforceable, then the estate could proceed with its tort claims against the Atigeo Parties.

For these reasons, resolution of Count I could alter Edra's rights and liabilities. Accordingly, we conclude that the bankruptcy court had "related to" jurisdiction over Count I.

By statute, a "bankruptcy judge may hear a proceeding that is not a core proceeding but otherwise related to a case under title 11 ." 28 U.S.C. § 157(c)(1). In those cases, a

bankruptcy judge may enter a final judgment if the parties consent.[19] 28 U.S.C. § 157(c)(2). Otherwise, the court must make findings of fact and conclusions of law which are reviewed de novo by the district court. Here, WCP voluntarily joined as a party to the adversary and fully participated in the proceedings. By participating, WCP consented to the bankruptcy court entering judgment on Count I. *See Mann v. Alexander Dawson Inc. (In re Mann),* 907 F.2d 923, 926 (9th Cir.1990); *Daniels–Head & Assocs. v. William M. Mercer, Inc.,* 819 F.2d 914, 919 (9th Cir.1987).[20]

Finally, to the extent WCP contends that its third-party contract-based claims against the Atigeo Parties fall outside the bankruptcy court's original jurisdiction, the bankruptcy court had supplemental jurisdiction under 28 U.S.C. § 1367(a) over those claims. WCP's contract-based claims against the Atigeo Parties were so related to the Plaintiffs' claims against the Trustee and Edra's estate (which were within the bankruptcy court's original jurisdiction) that they formed part of the same case or controversy. *Sasson v. Sokoloff (In re Sasson),* 424 F.3d 864, 869 (9th Cir.2005).

In the end, we find no basis for reversal of the bankruptcy court's decisions on jurisdictional grounds.

**B. Procedural Due Process**

 **\*13**  WCP was a party defendant to Count I for declaratory relief after the court ordered it to file an answer as such. Therefore, before WCP's interests in the Note and Letter Agreement referenced in Count I were extinguished, it was entitled to receive notice plus an opportunity to be heard.

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice [of the proceedings] must be of such nature as reasonably to convey the required information.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Under the rules in Part VII of the Federal Rules of Bankruptcy Procedure, applicable to adversary proceedings, a contested judgment can be achieved by a default judgment, a dispositive summary judgment motion under Civil Rule 56, *incorporated by* Rule 7056, or by trial. Because none of these occurred here,[21] the filing of the Stipulation and proposed order for declaratory judgment on Count I was procedurally flawed from the beginning.

The Atigeo Parties argue that the filing of a motion for summary judgment was unnecessary because the facts were "undisputed". However, this argument is disingenuous when WCP was a party defendant in the adversary but not a party to the stipulated facts on which declaratory judgment was based. As a party defendant, WCP's interests in the Note and Letter Agreement were directly affected by the settling parties' stipulated facts to which WCP would be bound. Accordingly, the filing of the Stipulation, accompanied only by a proposed order, deprived WCP of fair notice, possible discovery, and the opportunity to participate in motion practice with respect to the stipulated facts. "When third parties are affected, we scrutinize carefully the fairness of the hearing afforded." *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 764 (5th Cir.1995).

Generally speaking, "procedural errors are cured by holding a new hearing in compliance with due process requirements." *See Batanic v. Immigration and Naturalization Serv.,* 12 F.3d 662, 667 (7th Cir.1993). However, the bankruptcy court's July 22, 2011 order and notice regarding the September 7th Hearing did not correct the initial procedural irregularity. Granted, the court's notice set a "hearing," but the notice gave no indication that the purpose of the hearing was to resolve factual issues regarding Edra's breaches under the Letter Agreement—a motion for summary judgment would have given that type of notice. Further, the notice did not specify September 7th as a trial date nor did it invoke any alternative direct testimony rule that required the parties to submit direct testimony by declaration, and to have all witnesses giving testimony by declaration available at trial for cross-examination. Although the Trustee submitted the affidavits of Edra and Sandoval, neither of them were available for cross-examination.

 **\*14**  Undoubtedly WCP had an obligation to press forward on its objection to the Stipulation. However, some guidance was necessary here, especially in light of the fact that the Stipulation had been filed without a motion or notice.

Adding to the confusion was the combining of the hearings for declaratory relief in the adversary proceeding with the settlement under Rule 9019 in the main case. The settlement was contingent on approval of the Stipulation. Therefore, as described by the Trustee, there was a two-step process in play—the first of which was to obtain approval of Stipulation, which was for declaratory judgment in the adversary proceeding. However, as already noted, neither the purpose of the hearing nor the procedure for approving of the Stipulation was ever addressed by the court's notice. Thus, it is difficult to discern from the record exactly what procedure was followed for each of the matters before the court.

While approval of the settlement was governed under the rules in Part IX,[22] approval of the contested judgment was not. Neither the bankruptcy court's orders nor Memorandum Decisions state which provision of the adversary rules it relied upon to enter the stipulated declaratory judgment over WCP's objection. Even if we were to consider the bankruptcy court's approval of the Stipulation as a sua sponte (or de facto) ruling on summary judgment,[23] the procedural protections of notice are still lacking. To exercise the right to oppose summary judgment, a party must have notice. That notice gives a party a reasonable opportunity to present to the court material relevant to a Civil Rule 56 proceeding. *Bradly v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069–70 (3d Cir.1990). Here, because notice was inadequate, WCP was not afforded a reasonable opportunity to present evidence disputing the facts on which declaratory judgment was based. Moreover, since there was no "formal" motion for summary judgment, WCP was under "no formal compulsion to marshal all the evidence in support of [its] claims." *Id.*

On September 7th, the bankruptcy court could have continued the matter for summary judgment or for trial because discovery was on-going. WCP's counsel repeatedly made offers of proof with respect to evidence it already had and informed the court regarding its outstanding discovery. By issuing its ruling before WCP finished with discovery, the bankruptcy court effectively barred WCP from impeaching the veracity of Edra and Sandoval when both had "testified" only through hearsay declarations at the hearing.[24] Further, courts which allow direct testimony by declaration (the record does not reflect that the district of Montana authorizes this procedure), all require declarants to be present for cross examination or fundamental due process is absent. Edra and Sandoval were not present at the September 7th Hearing.

The bankruptcy court's characterization of the September 7th Hearing as an "evidentiary hearing" does not equate to due process nor can we say that conducting the hearing as an "evidentiary" hearing was harmless error under these circumstances. In contested matters, which this was not, Rule 9014(e) requires bankruptcy courts to "provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify." There was nothing in the bankruptcy court's July 22, 2011 notice that would enable WCP to determine that the hearing on the approval of the Stipulation and declaratory judgment would be an "evidentiary hearing" at which witnesses may testify and be cross-examined.

**\*15** Finally, although the hearing required by due process is subject to waiver, there was no waiver here. Waiver is the intentional relinquishment or abandonment of a known right. *Kontrick v. Ryan,* 540 U.S. 443, 458 n. 13 (2004). There is no basis in the record to conclude that WCP "knew or should have known" that the hearing on the approval of the Stipulation was in essence a de facto summary judgment or, alternatively a "trial," and that by failing to set forth its evidence or bring its witnesses, it would forever waive its rights to present evidence on the disputed facts. Due process is not simply satisfied by serving notice of a hearing. The notice served must contain adequate information and the content must have been reasonably calculated to put WCP on notice that it was required to produce its witnesses and submit all its evidence on September 7th or be forever barred. As discussed above, the initial procedure employed and the subsequent notice of the hearing fall far short of these requirements.

For all these reasons, we conclude that WCP did not have an adequate or meaningful opportunity to present contrary evidence at the September 7th Hearing on the approval of the Stipulation.

## VI. CONCLUSION

Our holding on the due process issue obviates the need to resolve any issues concerning the bankruptcy court's approval of the settlement because the settlement was contingent on approval of the stipulated declaratory judgment. Without the stipulated judgment, there is no settlement. Because WCP was not afforded due process in connection with the stipulated judgment, we VACATE the judgment and orders on appeal and REMAND for further proceedings.

In re Blixseth, Not Reported in B.R. (2012)

---

## Footnotes

\*    While not formally consolidated, these two related appeals were heard at the same time and were considered together. This single disposition applies to the two appeals, and the clerk is directed to file a copy of this disposition in each appeal.

\*\*   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (*see* Fed. R.App. P. 32.1), it has no precedential value. *See* 9th Cir. BAP Rule 8013–1.

1    Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

2    Atigeo and xPatterns are affiliated software development and sales companies. Atigeo was formerly known as Azimyth, LLC.

3    The record shows that there was a dispute as to whether Edra agreed to the loan from xPatterns to Sandoval. According to the Trustee's third-party complaint filed in the adversary (which we discuss below), Sandoval converted the funds and once Edra found out, Sandoval agreed to repay the "loan" in thirty to sixty days. At an October 12, 2010 hearing, the Trustee stated on the record that "at one point in time [Edra] alleged that Mr. Sandoval had wrongfully diverted money to his benefit." Hr'g Tr. 16:15–16, Oct. 12, 2010. Later, the Trustee submitted Edra's and Sandoval's affidavits in support of the Stipulation. Sandoval's affidavit states that Edra agreed to the loan. Edra's affidavit does not mention the loan. At the September 7th Hearing on the approval of the Stipulation, the Trustee stated that it would be difficult to establish the wrongful taking of money when Edra gave her permission to Sandoval to take the loan from xPatterns. Further, the advances were classified as loans on xPatterns financial statements and there was evidence that the loans owed to xPatterns by Sandoval were later satisfied. Hr'g Tr. 72–73, Sept. 7, 2011.

4    Blxware, LLC ("Blxware") is a company controlled by Edra and is the successor-in-interest to some if not all of Opspring's rights and obligations under the Letter Agreement.

5    Prior to this lawsuit, Edra had commenced an action in the Washington Superior Court, *Blixseth v. Atigeo, LLC et al.* (Case No. 08–2–18054–4) in connection with the Letter Agreement and the balance owed on the Note. Edra's complaint was dismissed with prejudice because the suit was filed prematurely as no money was yet due. Hr'g Tr. 102:2–14, Sept. 7, 2011.

6    The other defendants were Julie Barve ("Barve") and Matthew Crocker ("Crocker"), family members of Edra, and Erik Bergsagel. The bankruptcy court entered default judgments against Opspring and Blxware on May 27, 2011.

7    Other Counts asserted against the Trustee/Edra included: Declaratory Judgment Regarding Blixseth Family Interest; Breach of Contract (Indemnification); Breach of Contract (Performance Fee); Breach of Contract (Confidentiality); Breach of Contract (Return of Property); Tortious Interference; Trade Secret Misappropriation; Conversion; Civil Conspiracy; and Injunctive Relief.

8    In essence, then, the Trustee agreed with Plaintiffs that the Letter Agreement should be repudiated and declared unenforceable, albeit for different reasons.

9    Rule 7042 authorizes the court to have separate trials of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims for convenience, to avoid prejudice, or to expedite and economize.

10   Although WCP titled its pleading "Unopposed Motion to Intervene", WCP relied on Civil Rule 20(a) which allows permissive joinder of parties, and not Civil Rule 24, which sets forth the requirements for intervention. Civil Rule 20(a), authorizes persons to join an action as a defendant if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. There is no indication in the record whether these requirements were met.

11   Although WCP professed to be nothing more than Edra's creditor, and despite the fact that it had assumed no liabilities under the Letter Agreement, WCP answered all the Counts in the adversary complaint. WCP also asserted as an affirmative defense that the Plaintiffs' complaint failed due to their breach of the Letter Agreement.

12   It is unclear from the record why WCP dismissed Atigeo from the third-party complaint. However, the docket shows that after dismissing Atigeo, WCP sought to amend its third-party complaint to seek declaratory relief on the issue whether xPatterns was the alter ego of Atigeo. WCP alleged that such a determination was necessary to determine Atigeo's obligations under the Letter Agreement. The bankruptcy court granted WCP's motion to amend by order entered May 23, 2011. Atigeo answered the amended third-party complaint on June 10, 2011.

13   Although the Stipulation referenced the affidavits of Edra and Sandoval to support the facts stated, those affidavits were not filed with the Stipulation in the adversary proceeding. Rather, the affidavits were filed in connection with the parties' motion to settle the estate's tort claims against the Atigeo Parties under Rule 9019 in the main bankruptcy case. The settlement is discussed below.

14   As part of the Stipulation the Trustee also obtained contingent assignments from Barve and the trustee of Crocker's bankruptcy estate of all their interests in Atigeo, xPatterns and their interest or claims arising from or related to the Letter Agreement and the related

---

note. In exchange, the Trustee would pay Barve and the trustee in Crocker's estate $40,000 each out of the settlement proceeds. The Trustee also obtained from Edra a similar assignment.

15    The court's notice and order was necessary because WCP failed to notice its objection for hearing in accordance with Mont. LBR 9013–1.

16    The Trustee's exhibit list included the Letter Agreement; WCP's notice of UCC sale; Atigeo and xPatterns' notice regarding the possible impact on the adversary proceeding; assignments from Edra, Barve, and the trustee from Crocker's estate; and the affidavits of Michael Sandoval and Edra. WCP's exhibit list included its security agreement, promissory note, pleadings from the Washington Action and Edra's Washington Superior Court Case No. 08–2–18054–4; various emails; and letters. The Trustee's witness list identified himself and "any witness identified by any other party" and "[a]nyone presented in the courtroom as may be necessary for rebuttal, impeachment witnesses, or witnesses necessary to establish foundation." WCP's witness list mirrored the Trustee's, i.e., the only witness identified by name to testify was the Trustee.

17    Judge Kirscher was unable to hear the matter.

18    The bankruptcy court adopted the Trustee's and Atigeo Parties' proposed Findings of Fact and Conclusions of Law verbatim.

19    Actually, the declaratory judgment was not "final" because it did not dispose of all claims in the adversary. The Panel granted WCP leave to appeal the declaratory judgment by order entered March 9, 2012.

20    28 U.S.C. § 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction. Stern v. Marshall, —— U.S. ——, 131 S.Ct. 2594, 2607 (2011).

21    The Trustee and settling parties never filed a motion for summary judgment in connection with their request for approval of the Stipulation. Thus, Mont. LBR 7056–1, which governs summary judgment motions, was not followed. At minimum, that rule requires a motion with service and an opportunity to be heard. See Mont. LBR 9013–1(d) & (e). If this had been done, WCP would have been able to adequately respond to the motion with a Statement of Genuine Issues. Mont. LBR 9013(a)(2).

22    Mont. LBR 9014–1 which governs contested motions states that "[u]nless requested by a party and allowed by the Court, in its discretion, the Part VII rules identified in [Rule] 9014(c) shall not apply to any contested matter."

23    This is truly a stretch since the bankruptcy court characterized the hearing as an "evidentiary hearing" and made findings of fact and conclusions of law. Furthermore, the court heard testimony and made evidentiary rulings that are inconsistent with a hearing for summary judgment.

24    The Atigeo Parties argue that the affidavits of Edra and Sandoval were not inadmissible hearsay. Because Blixseth, her estate and the Trustee faced adverse judgment as defendants to Plaintiffs' Counts I and II–VI, they contend Blixseth's affidavit testimony constitutes a party-opponent's admission and, by definition, is not hearsay. Fed.R.Evid. 801(d)(2)(A). They further argue that Sandoval's affidavit independently corroborated Blixseth's affidavit so it too was not hearsay. However, on the hearsay issue, the record is unclear. We cannot tell if the bankruptcy court overruled WCP's hearsay objection because it considered the affidavits in connection with the Trustee's business judgment on the settlement or because the affidavits were being offered for the truth of the matter in connection with the court's approval of the Stipulation.

---

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.

1

2

**CERTIFICATE OF SERVICE**

3        1.  On October 18, 2013 I served the following document:

4    **APPELLANT GGW GLOBAL BRANDS. INC. OPPOSITION TO MOTION TO DISMISS**

5        2.  I served the above-named document by the following means to the persons listed

6        below:

7        ☒ ECF System to:

8        Mitchell J. Langberg mlangberg@bhfs.com, dcrudup@bhfs.com

9        Joanna M. Myers jmyers@bhfs.com
         Malhar S. Pagay mpagay@pszjlaw.com

10       Matthew Heyn mheyn@ktbslaw.com

11       ☐ Facsimile Transmission

12                Mitchell J. Langberg, Esq.
                  Brownstein Hyatt Farber Schreck LLP

13                100 North City Parkway, Suite 1600
                  Las Vegas, NV  89106

14                Fax No. (702) 382-8135

15
                  Malhar S. Pagay, Esq.

16                Pachulski Stang Ziehl & Jones LLP
                  10100 Santa Monica Blvd., 13th Floor

17                Los Angeles, CA  90067
                  Fax No. (310) 201-0760

18

19                David M. Stern, Esq.
                  KLEE TUCHIN BOGDANOFF & STERN LLP

20                1999 Avenue of the Stars, Thirty-Ninth Floor
                  Los Angeles, CA  89123

21                Fax No. (310) 407-9090

22

23        [I am an employee of an attorney of the State Bar of Nevada] I declare under penalty of

24    perjury the foregoing is correct and true.

25        October 18, 2013

26                                          _____

27

28

---