1

2  **UNITED STATES DISTRICT COURT**

3  **DISTRICT OF NEVADA**

4  * * *

5  In re:                                           Case No. 2:13-cv-01586-APG-NJK
   GGW BRANDS, LLC et al.

6
                      Debtors.                      **ORDER GRANTING APPELLEE WYNN LAS**
7                                                   **VEGAS'S MOTION TO DISMISS**

8
   GGW GLOBAL BRANDS, INC., as
9  successor in interest to PEPE BUS, LLC,

10                    Appellant,

11      v.

12  WYNN LAS VEGAS LLC, d/b/a WYNN LAS
    VEGAS; GGW DIRECT, LLC; GGW
13  BRANDS, LLC; GGW EVENTS, LLC,

14                    Appellees.

15

16  **I.    BACKGROUND**

17      In August 2009, Wynn Las Vegas, LLC obtained a judgment against Joseph R. Francis in

18  Nevada state court for $2,000,000 plus post-judgment interest (the "Marker Judgment").[1]  After

19  several years of unsuccessful collection efforts, in April 2012 Wynn Las Vegas filed a case in

20  Nevada state court against Francis and various business entities that Wynn Las Vegas believed

21  were his alter egos (the "Alter Ego Case").[2]  Wynn Las Vegas named the following defendants:

22      (i) GGW Direct, LLC;
        (ii) GGW Brands, LLC;
23      (iii) GGW Events, LLC;
        (iv) Mantra Films, Inc.;
24      (v) Blue Horse Trading, LLC;

25

26  _____

27  [1] (Dkt. No. 31-1.)

28  [2] (Dkt. No. 31-2.)

1  (vi) Pepe Bus, LLC;[3]
(vii) Sands Media, Inc.;
2  (viii) Joseph R. Francis;
(ix) David R. Houston; and
3  (x) David R. Houston, Ltd.

4  Wynn Las Vegas sought a declaration that these entities were alter egos of Francis, for the

5  purpose of collecting the Marker Judgment from them. It also claimed an entitlement to an

6  accounting of any assets held by attorney David R. Houston in the name of any of the defendant

7  entities.

8     In July 2012, Houston admitted that he held approximately $1,845,000 which he had

9  received from defendant GGW Direct (the "Trust Funds").[4] In August 2012, the state court

10 enjoined all the defendants from transferring the money out of Houston's trust account.[5]

11    In February 2013, various GGW entities filed for bankruptcy protection in the U.S.

12 Bankruptcy Court for the Central District of California (the "California Bankruptcy Court").

13 Defendants GGW Direct, GGW Events, and GGW Brands (the "Debtor Defendants") filed, along

14 with GGW Magazine. In March 2013, the Debtor Defendants removed the Alter Ego Case from

15 Nevada state court to the U.S. Bankruptcy Court for the District of Nevada (the "Nevada

16 Bankruptcy Court"). In April 2013, the California Bankruptcy Court appointed a Chapter 11

17 Trustee (R. Todd Neilson) for the Debtor Defendants and for GGW Magazine. That same month,

18 the Debtor Defendants moved the Nevada Bankruptcy Court to transfer venue of the Alter Ego

19

20

21    [3] In March 2012, Pepe Bus, LLC filed articles of termination in Montana on the basis that the
"LLC has been dissolved." (Dkt. No. 31 at 10.) The effective date of termination was March 5, 2012.
22 (Id.) Nonetheless, Pepe Bus is a proper defendant because:

23    the dissolution or termination of a limited liability company . . . does not take away or
impair any remedy available to or against the [LLC] or its members or managers for any
24    claim or right, whether or not the claim or right existed prior to dissolution or
termination. A proceeding by or against the [LLC] may be prosecuted or defended by the
25    [LLC] in its name. The members and managers have power to take action as appropriate
to protect the remedy, right, or claim.
26
MONT. CODE ANN. § 35-8-909(1).
27    [4] (Dkt. No. 31-4.)

28    [5] (Dkt. No. 31-5.)

1  Case to the California Bankruptcy Court, and Wynn Las Vegas moved to remand the case back to

2  state court.

3       In May 2013, yet another GGW entity filed for bankruptcy: GGW Marketing.[6]  The

4  California Bankruptcy Court administratively consolidated all of the GGW entities' bankruptcy

5  proceedings.  Wynn Las Vegas asserted claims in the California Bankruptcy Court against the

6  GGW debtor entities' bankruptcy estates.

7       On July 15, 2013, the Trustee and GGW Marketing, in its capacity as debtor in

8  possession, jointly moved for an order approving settlement in the California Bankruptcy Court

9  under Bankruptcy Rule 9019.[7]  The Settlement proposed the following:

> (1) $800,000 of the Trust Funds would be paid to the Trustee;
>
> (2) the remainder of the Trust Funds would be paid to Wynn Las Vegas, reducing the amount owed to Wynn Las Vegas under the Marker Judgment;
>
> (3) Upon receipt of payment, Wynn Las Vegas would dismiss the Debtor Defendants from the Alter Ego Case without prejudice;
>
> (4) Upon receipt of payment, the Debtor Defendants' motion to transfer venue would be deemed withdrawn; and
>
> (5) Upon receipt of payment, Wynn Las Vegas's motion to remand to state court would be granted.

The Settlement included a pre-drafted stipulation to be filed in the Nevada Bankruptcy Court.
The Stipulation was necessary to effectuate the Settlement because the Nevada Bankruptcy Court
had jurisdiction over the Alter Ego Case and because Houston's trust account was in Nevada.

---

[6] GGW Marketing continued as a debtor-in-possession without an appointed Chapter 11 trustee.

[7] (Dkt. Nos. 31-6, 31-7, 31-8.)  In relevant part, Bankruptcy Rule 9019 provides:

(a) Compromise

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, . . . and to any other entity as the court may direct.

(b) Authority to compromise or settle controversies within classes

> After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

On July 23, 2013, appellant GGW Global Brands, LLC ("GGW Global") filed an opposition to the Settlement Agreement in California Bankruptcy Court.[8]  GGW Global asserted that it had standing as the sole member of GGW Marketing, and because the Trust Funds were property of defendant Pepe Bus and Pepe Bus had transferred its interest in those funds to GGW Global.  GGW Global asserted that it would appear in the Alter Ego Case in the Nevada Bankruptcy Court to assert its claims to the Trust Funds.  Essentially, GGW Global contended that the settling parties had no authority to distribute the funds of a non-settling party.

On July 31, 2013, Wynn Las Vegas moved the Nevada Bankruptcy Court to approve the Stipulation.[9]

On August 6, 2013, the California Bankruptcy Court issued a tentative ruling approving the Settlement Agreement.[10]  Notably, the court rejected GGW Global's arguments because GGW Global had provided no evidence to substantiate the allegation that the Trust Funds belonged to Pepe Bus or that Pepe Bus had assigned the rights to those funds to GGW Global.

On August 7, 2013, the California Bankruptcy Court held a hearing on the motion to approve the Settlement.  GGW Global appeared.  The court approved the tentative ruling as final.

On August 9, 2013, the California Bankruptcy Court approved the Settlement under Bankruptcy Rule 9019.[11]  GGW Global did not appeal the order approving the Settlement.

On August 14, 2013, GGW Global filed an answer in the Alter Ego Case in the Nevada Bankruptcy Court.[12]  The answer included a counterclaim and crossclaim, seeking a declaration that GGW Global was the rightful owner of the Trust Funds as successor-in-interest to Pepe Bus's interest in the Trust Funds.  GGW Global also filed an opposition to Wynn Las Vegas's motion to

[8] (Dkt. Nos. 31-9, 31-10.)
[9] (Dkt. Nos. 31-14, 31-15, 31-16.)
[10] (Dkt. No. 31-40.)
[11] (Dkt. No. 31-11.)
[12] (Dkt. No. 31-17.)

1   approve the Stipulation, raising essentially the same arguments as in the opposition to the

2   Settlement in the California Bankruptcy Court.[13]  On August 21, Wynn Las Vegas replied.[14]

3   On August 23, 2013, GGW Global filed a "Supplemental Opposition to Motion for Order

4   Approving Stipulation."[15]  Four days later, Wynn Las Vegas filed an opposition to and motion to

5   strike GGW Global's Supplemental Opposition as an unauthorized sur-reply.[16]

6   On August 28, 2013, the Nevada Bankruptcy Court held a hearing on the motion to

7   approve the Stipulation.  GGW Global appeared.  The court struck GGW Global's Supplemental

8   Opposition as an unauthorized sur-reply, and granted the motion.  The next day, the court entered

9   a written order approving the stipulation (the "Appealed Order").[17]

10  On August 30, 2013, I granted a temporary stay of the Appealed Order, valid through

11  September 5, 2013.[18]  On September 3, GGW Global filed a Notice of Appeal and election to

12  have the appeal heard by this Court.[19]  After I and the Ninth Circuit denied any further stays of

13  the Appealed Order, and the Ninth Circuit denied GGW Global's petition for a writ of mandamus,

14  on September 6 Houston disbursed the Trust Funds to the Trustee and to Wynn Las Vegas.

15  On September 13, 2013, the Nevada Bankruptcy Court deemed the motion to transfer

16  venue withdrawn, dismissed GGW Brands, GGW Direct, and GGW Events from the Alter Ego

17  Case without prejudice, and remanded the Alter Ego Case back to state court.[20]

18  Wynn Las Vegas moved to dismiss this appeal.[21]  In conjunction, it requests judicial

19  notice of various documents from the proceedings in the Nevada state court, the California

20

21

22  [13] (Dkt. No. 31-18.)

23  [14] (Dkt. No. 31-19.)
    [15] (Dkt. No. 31-26.)

24  [16] (Dkt. No. 31-28.)

25  [17] (Dkt. No. 31-31.)

26  [18] (Dkt. No. 4.)
    [19] (Dkt. No. 17-2 at 49.)

27  [20] (Dkt. Nos. 31-37, 31-38, 31-39.)

28  [21] (Dkt. No. 29.)

Bankruptcy Court, and the Nevada Bankruptcy Court.[22]   The parties have submitted their appellate briefs; however, I need not reach the merits of the appeal because GGW Global does not have standing to bring a non-party appeal.   Accordingly, I grant the motion to dismiss.

## II.     ANALYSIS

### A.     Judicial Notice

Under Evidence Rule 201, "a court may take notice of matters of public record."[23]   The court may judicially notice filings from other court proceedings.   However, "documents are judicially noticeable for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean."[24]   With that proviso in mind, I grants Wynn Las Vegas's request for judicial notice.

### B.     Standing

"The general rule 'that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.'"[25]   In *Marino*, the Supreme Court noted a suggestion "that there may be exceptions to this general rule, primarily when the nonparty has an interest that is affected by the trial court's judgment."[26]   The Court held, however, that "the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable."[27]

The Ninth Circuit has consistently held that "a nonparty has standing to appeal a district court's decision only in exceptional circumstances, . . . when (1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of

---

[22] (Dkt. Nos. 31, 43, 46.)

[23] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[24] *U.S. v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) (citing *Lee*, 250 F.3d at 690).

[25] *Powers v. Eichen*, 229 F.3d 1249, 1252 (9th Cir. 2000) (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)).

[26] *Marino*, 484 U.S. at 304.

[27] *Id.*

hearing the appeal."[28]  "Generally, . . . the equities support nonparty standing when a party has

haled the non-party into the proceeding against his will, and then he has attempted to thwart the

nonparty's right to appeal by arguing that he lacks standing, . . . or when judgment has been

entered against the nonparty . . . ."[29]  "A nonparty must, of course, also have a personal stake in

the outcome of the litigation discernible from the record before it will be allowed to maintain an

appeal."[30]

GGW Global has not moved to intervene in the Nevada Bankruptcy Court or in this Court.

GGW Global participated in the Nevada Bankruptcy Court proceedings by filing an answer,

which included a counterclaim and crossclaim,[31] by filing an opposition to Wynn Las Vegas's

motion to approve the stipulation,[32] and by appearing at the motion hearing.  However, GGW

Global does not have standing to appeal because the equities are not in its favor and because the

record contains no indication that GGW Global has a personal stake in the Trust Funds.

GGW Global was not haled into the Nevada Bankruptcy Court against its will, as it is not

a named defendant in the Alter Ego Case.  Nor does the Stipulation amount to a judgment against

GGW Global.  Viewing the equities more broadly, GGW Global had the opportunity to present its

arguments in the California Bankruptcy Court proceedings.  I do not reach the issue of whether

the California Bankruptcy Court's orders had collateral estoppel effect on the Nevada Bankruptcy

Court.  Instead, I simply note that GGW Global was not unfairly denied an opportunity to present

its arguments and to present evidence in support of those arguments in California.  GGW Global

again could have submitted evidence in the Nevada Bankruptcy Court, but it declined.

GGW Global attempts to rely on a declaration by Francis to support its assertion that the

Trust Funds came from Pepe Bus and that Pepe Bus assigned its rights in those funds to GGW

---

[28] *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (internal quotation marks and citation omitted).

[29] *Id.*

[30] *E.E.O.C. v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990).

[31] (Dkt. No. 31-17.)

[32] (Dkt. Nos. 31-9, 31-10.)

1  Global.[33]  The declaration is dated August 22, 2013.  In pertinent part, Francis declares that, when

2  he was the manager of Pepe Bus, he asked the Chief Financial Officer ("CFO") to pull the Pepe

3  Bus accounting records of fund transfers from Pepe Bus to another business entity called

4  Boulevard Management.  The CFO's report allegedly shows that $1,750,000 of Pepe Bus's funds

5  were transferred to Boulevard Management, who in turn allegedly transferred the funds to

6  attorney David Houston's trust account.  Francis also attaches the purported assignment of Pepe

7  Bus's interest in the $1,750,000, when the funds were on deposit with Boulevard Management, to

8  GGW Global.  The alleged assignment is dated June 12, 2011.

9      The declaration is problematic for several reasons, however.  First, it is unsworn and

10  therefore inadmissible.[34]  Second, Francis does not have personal knowledge of the alleged

11  transfers from Pepe Bus to Boulevard Management, and from Boulevard Management to David

12  Houston.  Francis's personal involvement was limited to asking the CFO to prepare a transaction

13  report.  The CFO may have personal knowledge of the purported transfers, but GGW Global

14  Direct did not submit a declaration by the CFO.  Third, the alleged transaction report is

15  inadmissible hearsay.  GGW Global Direct submits the report for the truth of what it asserts: that

16  money was transferred from Pepe Bus to Boulevard Management.  Yet there is no indication that

17  the record complies with the business records exception for hearsay.[35]  Nothing supports even an

18  inference that the record was kept in the course of Pepe Bus's regularly-conducted activity or that

19  "making the record was a regular practice of that activity."[36]  Francis's declaration cuts against

20  such an inference, as he avers that he gave detailed instructions to the CFO to make this particular

21  report.  Finally, even if the declaration was not infirm, the purported "chain of title" to the

22  $1,750,000 is insufficient.  It is unclear whether Pepe Bus retained any interest in the money after

23

24

_____

25  [33] (Dkt. No. 39 at 5 (citing Francis Decl., EOR 1059–67, Dkt. No. 17 at 62 through Dkt. No. 17-1
26  at 8).)

   [34] See *Shuffle Master, Inc. v. MP Games, LLC*, 553 F. Supp. 2d 1202, 1210 (D. Nev. 2008).
27  [35] FED. R. EVID. 803(6).

28  [36] FED. R. EVID. 803(6)(c).

1   it was transferred to Boulevard Management. As such, Pepe Bus's purported assignment of the

2   funds to GGW Global Direct is questionable.

3       As a consequence, mere allegation is all that exists to support GGW Global's argument

4   that Pepe Bus owned the Trust Funds and that Pepe Bus assigned those funds to GGW Global.

5   This is insufficient to confer standing to appeal on GGW Global.[37]

6       Moreover, it would be unfair to allow GGW Global to unwind a Settlement Agreement

7   which has been approved by the California Bankruptcy Court and, in part, by the Nevada

8   Bankruptcy Court on the basis of allegation alone. Although I do not reach the issue of equitable

9   mootness, there likely would be practical and administrative difficulties if I were to order Wynn

10  Las Vegas and the Trustee to disgorge the Trust Fund monies.

11      GGW Global argues that it need not move to intervene because it stands in Pepe Bus's

12  shoes as its successor-in-interest. For support, GGW Global cites *McCarthy Western*

13  *Contractors, Inc. v. Phoenix Resort Corp.*, a Ninth Circuit case which addresses situations in

14  which federal entities such as the Federal Deposit Insurance Corp. ("FDIC") are successors-in-

15  interest to failed financial institutions.[38] The Ninth Circuit explained that the Federal Home Loan

16  Bank Act is regularly interpreted to provide for "the substitution of the [FDIC] in any civil action,

17  by operation of law, on the date it is appointed by the receiver of a failed financial institution that

18  is a named party."[39] In that circumstance, the FDIC need not intervene because it automatically

19  steps into the shoes of the failed financial institution. However, that situation is not analogous to

20  the instant case because the FDIC is the successor-in-interest to the financial institution as a

21  whole and because the FDIC is substituted by operation of statute. Here, Pepe Bus has been

22  terminated and there is no indication that GGW Global succeeded Pepe Bus as an entity; nor is

23  there a statutory basis to substitute GGW Global into this proceeding. GGW Global merely

24  contends that it is the assignee of Pepe Bus's purported interest in the Trust Funds. Finally,

25

26  ───────────────

27  [37] *See Pan Am.*, 897 F.2d at 1504.

    [38] *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 951 F.2d 1137 (9th Cir. 1991).

28  [39] *Id.* at 1141.

1  *McCarthy* concerns standing to invoke removal jurisdiction rather than standing to appeal.

2  *McCarthy* is inapposite; it does not stand for the broad proposition that GGW Global asserts.

3  GGW Global also relies on an unpublished case from the Idaho bankruptcy court.[40] Even

4  if this case were binding, which it is not, it does not provide enough to support GGW Global's

5  contention. In footnotes, the court noted that defendant Education Credit Management

6  Corporation ("ECMC") is the successor-in-interest to several named defendants, and that ECMC

7  had filed an answer. The court did not explain how ECMC came to be the named defendants'

8  successor-in-interest—whether by operation of statute, contract, or otherwise—and the court left

9  unsaid whether ECMC moved to intervene under Rule 24 (applicable in bankruptcy adversary

10  proceedings under Bankruptcy Rule 7024).

11  In sum, GGW Global does not have standing to appeal. It is but a stranger to the Alter

12  Ego Case in the Nevada Bankruptcy Court and to this appeal.[41] Its alleged personal stake in the

13  outcome of the litigation is *not* discernible from the record.[42] I thus grant Wynn Las Vegas's

14  motion to dismiss.

15  I need not reach the other issues raised in the motion to dismiss: whether the order on

16  appeal is final, whether the appeal is equitably moot, and whether collateral estoppel dictated the

17  Nevada Bankruptcy Court's decision.

18  I will address separately Wynn Las Vegas's motion for awards, damages, and costs on the

19  basis that this appeal is frivolous.

20  / / / /

21  / / / /

22  / / / /

23  / / / /

24  / / / /

25  _____

26  [40] *Weil v. U.S. Bank, N.A.*, No. 99-00272, 99-6222, 2000 WL 33712215 (Bankr. D. Idaho June 29, 2000).

27  [41] *See Bennett v. Jonas (In re Wonderbowl, Inc.)*, 515 F.2d 18, 19 (9th Cir. 1975) (per curiam).

28  [42] *See Pan Am.*, 897 F.2d at 1504.

1    **III.    <u>CONCLUSION</u>**

2            Wynn Las Vegas's motion to dismiss (Dkt. No. 29) is GRANTED.

3            DATED this 1st day of May, 2014.

4

5                                              _____

6                                              ANDREW P. GORDON
                                               UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28