# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br>GGW BRANDS, LLC et al.<br><br>Debtors. | Case No. 2:13-cv-01586-APG-NJK<br><br>**ORDER GRANTING APPELLEE WYNN LAS VEGAS'S MOTION FOR SANCTIONS**<br><br>(Dkt. No. 49) |
| GGW GLOBAL BRANDS, INC., as successor in interest to PEPE BUS, LLC,<br><br>Appellant,<br><br>v.<br><br>WYNN LAS VEGAS LLC, d/b/a WYNN LAS VEGAS; GGW DIRECT, LLC; GGW BRANDS, LLC; GGW EVENTS, LLC,<br><br>Appellees. | |

## I. BACKGROUND

The factual and procedural background of this appeal is set forth in the previous Order Granting Appellee Wynn Las Vegas's Motion to Dismiss (the "Dismissal Order").[1] In that order, I dismissed this appeal because appellant GGW Global Brands, Inc. ("GGW Global") did not sufficiently establish that it had standing to bring the appeal. GGW Global is a nonparty to the underlying litigation in the U.S. Bankruptcy Court for the District of Nevada ("Nevada Bankruptcy Court") and to this appeal.

Appellee Wynn Las Vegas LLC ("Wynn Las Vegas") has moved for sanctions against GGW Global under Bankruptcy Rule 8020 for filing a frivolous appeal.[2] Wynn Las Vegas contends that sanctions are warranted because (1) the underlying basis for the appeal lacked merit

---

[1] (Dkt. No. 66.)

[2] (Dkt. No. 49.)

because GGW Global failed to properly appeal the previous decision of the U.S. Bankruptcy Court for the Central District of California ("California Bankruptcy Court"); (2) GGW Global raised no good faith arguments in this appeal; (3) the authority upon which GGW Global relied for its procedural due process argument is unpublished and inapposite as factually distinguishable from this case; and (4) GGW Global's arguments were based on factual misrepresentations. Unsurprisingly, GGW Global contests each of these arguments.

II. **ANALYSIS**

Bankruptcy Rule 8020 provides:

> If a district court . . . determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court . . . and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

"This rule is modeled after Federal Rule of Appellate Procedure 38[,] and cases examining appellate rule 38 guide [me] in determining when an appeal is deemed frivolous for purposes of [Bankruptcy Rule] 8020."[3] However, neither of these two rules defines "frivolous." To fill this gap, the Ninth Circuit has held that "[a]n appeal is frivolous if [1] the results are obvious, or [2] the arguments of error are wholly without merit."[4] It is not necessary that every argument be "wholly without merit"; courts may limit sanctions to frivolous portions of an appeal.[5]

Because GGW Global's arguments as to why it had standing to appeal were entirely meritless—and therefore the dismissal for lack of standing was an obvious result—sanctions against GGW Global are justified.

As explained in the Dismissal Order, a "nonparty must . . . have a personal stake in the outcome of the litigation discernible from the record before it will be allowed to maintain an

---

[3] *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 297 (B.A.P. 9th Cir. 1998).

[4] *George v. City of Morro Bay (In re George)*, 322 F.3d 586, 591 (9th Cir. 2002) (internal quotation marks and citation omitted).

[5] *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993).

appeal."[6] The burden to demonstrate this personal stake was on GGW Global,[7] and it fell far short of the mark. Not only were GGW Global's merits arguments unpersuasive (which alone is insufficient to warrant sanctions), but it completely failed to legitimize the seeming manipulations and sham transactions upon which it based its alleged personal stake. Those transactions point to GGW Global as a formerly-dissolved entity with zero assets, which Francis resurrected for the purposes of circumventing the California bankruptcy proceedings and recharacterizing property of the Chapter 11 Estate as property of a non-debtor entity (GGW Global) by way of assignment from another non-debtor entity (Pepe Bus, LLC).

GGW Global merely asserted, with woefully inadequate support in the record, that it held an interest in the Trust Funds held by attorney David Houston. It argued that the Trust Funds came from Pepe Bus (a defendant in the underlying Alter Ego Case), and that Pepe Bus had assigned its interest in those funds to GGW Global. Consequently, GGW Global contended, it had a stake in the outcome of the litigation which determined the division of the Trust Fund monies between the Chapter 11 Trustee (R. Scott Nielson) and Wynn Las Vegas.

The Dismissal Order explains that GGW Global's evidence on those points was wholly defective. GGW Global relied primarily on a declaration by Joseph S. Francis, which was unsworn and therefore inadmissible. The declaration avers that Pepe Bus transferred $1,750,000 of its funds to another entity, Boulevard Management ("Boulevard"), which in turn transferred those funds to attorney Houston's trust account. In support, Francis attached an accounting record allegedly prepared by Pepe Bus's Chief Financial Officer ("CFO") upon Francis's specific instruction. Yet the accounting record is inadmissible hearsay, and Francis has no personal knowledge of the alleged transfers from Pepe Bus to Boulevard and from Boulevard to David Houston. It remains unexplained why GGW Global did not submit a declaration by the CFO attesting to these transactions. Also in support, Francis attached the purported assignment of Pepe Bus's interest in the $1,750,000 to GGW Global. Even if Francis's declaration were

---

[6] *E.E.O.C. v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990).

[7] *See McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 670 (9th Cir. 1998).

admissible, and thus the purported assignment were authenticated, Francis did not explain how and whether Pepe Bus retained any interest in the allegedly transferred funds once they were in Boulevard's possession. It could be that Boulevard held the funds on behalf of Pepe Bus, or that Pepe Bus was paying Boulevard for services rendered, in which case Pepe Bus would have lost all interest in those funds. But GGW Global submitted nothing to shed light on this issue. GGW Global's argument that it had standing to appeal as a non-party was wholly without merit, and it was obvious that I would dismiss the appeal for lack of standing.

Moreover, additional evidence indicates that GGW Global should have known that its arguments about standing were not meritorious. As to the $1,750,000 which Pepe Bus allegedly transferred to Boulevard, a Boulevard document titled "JF – Schedule of Deposits" lists only $295,000 in transfers from Pepe Bus, all in January 2010.[8] In January and February 2010, there were three transfers from Francis totaling $1,550,000. Although the $1,550,000 conceivably could have been transferred on Pepe Bus's behalf, that would be a speculative conclusion in light of the available evidence. Indeed, the evidence cuts against that conclusion, as the three checks from Francis to Boulevard indicate nothing about Pepe Bus or any other business entity.[9] Even if these transfers were on behalf of Pepe Bus, however, Boulevard's apparent role in Francis's affairs was limited to providing services to Francis individually and not to any of his business entities. A letter from Boulevard to Francis states that Boulevard "propose[s] to provide . . . services for [Francis's] personal accounts only."[10] Although this letter is a proposal rather than a contract for services, it supports the reasonable inference that Boulevard would not have held any funds in Pepe Bus's name, such that Pepe Bus apparently lost its interest in those funds upon their transfer to Boulevard.

The most damning evidence against GGW Global is that it reported "total gross assets" of "zero" in its 2012 State of Delaware Annual Franchise Tax Report, dated May 22, 2012.[11] The

---

[8] (Dkt. No. 45-6 at 2.)

[9] (Dkt. No. 45-7 at 2–4.)

[10] (Dkt. No. 45-5 at 2.)

[11] (Dkt. No. 46-6 at 2–3.)

purported transfer of Pepe Bus's alleged interest in the Trust Funds occurred in 2011, so it is unclear how GGW Global can now claim an interest in those funds when it declared zero gross assets in 2012. It could be that reportable assets, for purposes of Delaware state taxes, would not include an interest in funds held in a lawyer's trust account, but I will not reach that conclusion on my own without any legal support—legal support which GGW Global has failed to provide.

Finally, Francis's purpose in reviving GGW Global from dissolution is suspect. He filed the "Certificate of Revocation of Voluntary Dissolution" on May 11, 2012,[12] just one month after the California Bankruptcy Court appointed a Chapter 11 Trustee, thereby precluding the GGW debtor entities from operating themselves as debtors-in-possession. Then, relying on scant factual support which GGW Global has done nothing to legitimize, GGW Global asserted that it has an interest in $1,845,000 in funds which the California Bankruptcy Court ultimately determined were property of the bankruptcy estate. GGW Global's rise from the near-death of dissolution seems all too convenient, as a means of attempting to remove a substantial amount of funds from the bankruptcy estate.

I cannot conclusively determine Francis's intentions in resurrecting GGW Global or whether GGW Global actually has an interest in the Trust Funds. Nevertheless, GGW Global's utter failure to take any meaningful steps to establish that interest (which seems quite unlikely in light of the evidence presented by Wynn Las Vegas and which in turn was necessary to have standing to appeal the Nevada Bankruptcy Court's order) renders GGW Global liable for sanctions. The murkiness surrounding GGW Global's status should have put GGW Global on notice that merely relying on allegations to assert standing was wholly insufficient, and that the obvious result would be dismissal of the appeal.[13]

Consequently, GGW Global is liable for sanctions under Bankruptcy Rule 8020. I decline to impose sanctions on GGW Global's past or present counsel because the frivolous conduct was

---

[12] (Dkt. No. 64 at 11.)

[13] Wynn Las Vegas's other arguments in support of sanctions are rejected.

the taking of the appeal, not the way in which the appeal was litigated,[14] and because I cannot infer that the "bulk of the blame for the frivolous appeal rests with [GGW Global's] attorney[s]."[15]

### III. CONCLUSION

In accord with the above, I hereby ORDER:

1. Wynn Las Vegas's motion for sanctions (Dkt. No. 49) is GRANTED. GGW Global is liable for damages and costs to Wynn Las Vegas under Bankruptcy Rule 8020.
2. Within 14 days of the entry of this Order, Wynn Las Vegas shall submit a brief itemizing the damages and costs it suffered as a direct consequence of the filing of this appeal. GGW Global may respond to Wynn Las Vegas's brief within seven days after Wynn Las Vegas files its brief.

DATED this 29th day of May, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[14] *See E-Pass Techs., Inc. v. 3Com Corp.*, 559 F.3d 1374, 1380 (Fed. Cir. 2009).
[15] *Maher v. Hyde*, 272 F.3d 83, 87 (1st Cir. 2001) (internal quotation marks and citation omitted).